513 So.2d 122 (1987)
Frederick A.R. HEURING, Petitioner,
v.
STATE of Florida, Respondent.
No. 69609.
Supreme Court of Florida.
September 24, 1987.
*123 Larry D. Simpson of Davis, Judkins & Simpson, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen., and John M. Koenig, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
SHAW, Justice.
We have for review Heuring v. State, 495 So.2d 893 (Fla. 1st DCA 1986), in which the district court certified the following question as one of great public importance:
IN A PROSECUTION FOR SEXUAL BATTERY UNDER SECTION 794.011(2), FLORIDA STATUTES (1977-1983), WHERE DEATH IS NOT A POSSIBLE PENALTY BECAUSE OF THE HOLDING IN BUFORD V. STATE, 403 So.2d 943 (FLA. 1981), MAY THE STATE PROCEED BY INFORMATION INSTEAD OF INDICTMENT?
495 So.2d at 894. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
A capital felony is one that is punishable by death. Rusaw v. State, 451 So.2d 469 (Fla. 1984). Sexual battery is not punishable by death. Buford. Further, we held in Rowe v. State, 417 So.2d 981 (Fla. 1982), that murder in the first-degree is the only existing capital felony in Florida. We answer the certified question in the affirmative. Sexual battery is not a capital offense, and, therefore, it may be charged by information. See also State v. Hogan, 451 So.2d 844 (Fla. 1984) (sexual battery is not punishable by death, and therefore, it may be tried by a six-member jury).
Having answered the certified question, we turn to the merits of this cause. Frederick A.R. Heuring was convicted and sentenced for the sexual battery of his stepdaughter, Melody, when she was between the ages of seven and twelve, in violation of sections 794.011(2) and (4)(e), Florida Statutes (1977-1983). Pursuant to section 90.404(2) and (4)(e), Florida Statutes (1985), the state filed a notice of intent to offer similar fact evidence that Heuring sexually battered his daughter, Anita, when she was between the ages of seven and fifteen. The batteries allegedly occurred approximately twenty years before the charged offenses.
The district court rejected Heuring's argument that the prior batteries were too remote to be relevant, reasoning that
[i]n determining whether evidence is too remote to be relevant, and therefore admissible, [sic] the court must consider not the passage of time alone, but the effect of the passage of time on the evidence. Remoteness in terms of the passage of time precludes the use of evidence that has become unverifiable through loss of memory, unavailability of witnesses and the like.
*124 495 So.2d at 894. Further, the court recognized that the absence of similar conduct for an extensive period of time might suggest that the conduct is no longer characteristic of the defendant. We agree with the court that, nevertheless, the evidence of the prior batteries was admissible. As the court noted, the opportunity to sexually batter young children in the familial setting often occurs only generationally. Heuring sexually battered the young female members of his family when the opportunity arose. Heuring does not dispute the court's finding that the passage of time had no effect on the witness's memory. We agree with the district court that the passage of time in this instance did not affect the reliability of the evidence.
Heuring next argues that the evidence of the prior battery was not proper Williams rule evidence. Similar fact evidence that the defendant committed a collateral offense is inherently prejudicial. Introduction of such evidence creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense. Keen v. State, 504 So.2d 396 (Fla. 1987); Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Such evidence is, therefore, inadmissible if solely relevant to bad character or propensity to commit the crime. Peek v. State, 488 So.2d 52 (Fla. 1986); Coler v. State, 418 So.2d 238 (Fla. 1982), cert. denied, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses. See Thompson v. State, 494 So.2d 203 (Fla. 1986); Drake v. State, 400 So.2d 1217 (Fla. 1981). The California Supreme Court aptly illustrated this point in People v. Haston, 69 Cal.2d 233, 444 P.2d 91, 70 Cal. Rptr. 419 (1968). The court stated
[i]t is apparent that the indicated inference does not arise ... from the mere fact that the charged and uncharged offenses share certain marks of similarity, for it may be that the marks in question are of such common occurrence that they are shared not only by the charged crime and defendant's prior offenses, but also by numerous other crimes committed by persons other than defendant. On the other hand, the inference need not depend upon one or more unique or nearly unique features common to the charged and uncharged offenses, for features of substantial but lesser distinctiveness, although insufficient to raise the inference if considered separately, may yield a distinctive combination if considered together. Thus it may be said that the inference of identity arises when the marks common to the charged and uncharged offenses, considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses.
Id. at 245-46, 444 P.2d at 99-100, 70 Cal. Rptr. at 427-28 (footnotes omitted). In addition to the above requirements, the evidence must be relevant to a material fact in issue such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident. See § 90.404(2)(a).
Cases involving sexual battery committed within the familial context present special problems. The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue. In such cases, some courts have in effect relaxed the strict standard normally applicable to similar fact evidence. These courts have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan, or design, even though the distinction between sexual design and sexual disposition is often tenuous. We find that the *125 better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect. See Comment, Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses,, 25 U.C.L.A.L.Rev. 261 (1977). The court did not err, in the instant case, in allowing evidence of Heuring's sexual battery of his daughter, Anita.
Heuring also argues that the cumulative effect of several errors at trial requires reversal of his convictions. We agree. Heuring testified on direct examination that he had not molested Anita, the older daughter; Melody, the stepdaughter; or Greg, the stepson. The state asked Heuring on cross-examination whether he had molested five children not at issue in the case. Over defense objection, the court found the questioning proper based on its mistaken belief that Heuring had testified earlier that "he didn't molest anyone." On redirect, Heuring testified that he had previously accused one of these five children of stealing. On re-cross, the state requestioned Heuring as follows:
Q Mr. Heuring, let me see if I can understand this, also. If the Barnhill children get on the witness stand and testify that you have sexually molested them, is it because they're trying to get even for you threatening to call the Sheriff; is that the reason they're going to testify that way?

A I don't know what their reason is. I have never molested those children, never touched them.
Q Is that what you believe is going to be their motivation for them testifying that way?

MS. DOUGHERTY: Your Honor, I object.
THE COURT: Objection sustained. (Emphasis added.)
The state argues that the molestations of these five children were admissible as similar fact evidence under Williams. The trial court, however, correctly excluded direct evidence of these molestations since they were not sufficiently similar to the charged offenses. The questioning regarding the molestations was not proper impeachment. The court therefore erred in allowing the state to present inadmissible evidence through its improper questioning of Heuring. We cannot say beyond a reasonable doubt that the improper questioning did not affect the jury's verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Accordingly, we vacate Heuring's convictions and sentences, and remand for a new trial.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.