521 So.2d 269 (1988)
Aaron J. EDMOND, Appellant,
v.
STATE of Florida, Appellee.
No. 86-2515.
District Court of Appeal of Florida, Second District.
March 2, 1988.
James Marion Moorman, Public Defender, and Stephen Krosschell, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
In this appeal, the appellant, Aaron J. Edmond, argues that the trial court improperly admitted collateral crime evidence pursuant to Williams v. State[1] and section 90.404(2)(a), Florida Statutes (1985). We agree with Edmond's contention and reverse his conviction following a jury verdict of guilty of attempted sexual battery.
This appeal stems from the following events as testified to by the victim, N.B., at Edmond's trial on the charge of sexual battery. On January 19, 1986, Edmond picked up N.B. at her home in Tampa and took her to a Lakeland night club. They remained at the club from 9:00 p.m. to midnight, where they danced, talked, and each had one drink. On their return trip to Tampa, Edmond exited the expressway in Plant City, explaining that he was travelling to Tampa by a different route. In Plant City, Edmond stopped at a duplex where he said his aunt resided. He went inside for about five minutes, exited the duplex and requested N.B. to come inside so that she could meet his aunt, which she did. After a brief conversation with the aunt, N.B. followed Edmond to another bedroom. They talked for about ten minutes, then Edmond placed N.B. on the bed and removed her jacket. Edmond told N.B. he wanted to have sex with her, but she pushed him away. N.B. screamed but the persons who were in the next room did not respond. A struggle ensued and Edmond agreed to take N.B. home.
On their way to N.B.'s home, Edmond veered off the road as if they were going to stop. N.B. became frightened and twice opened the door in an attempt to get out of the car. Edmond pulled her back into the vehicle, stating that he was not going to do anything to her. Edmond stopped on a dirt road in an orange grove. N.B. ran out of the car, but Edmond caught her and placed her back in the car. Edmond drove further down the road, stopping near a golf course. Edmond pushed N.B. back against the passenger door, placing her legs on the seat. He then removed her pantyhose and underwear while he held her against the door. Edmond achieved vaginal penetration with his penis. When N.B. struggled, Edmond placed his hand around her throat advising her not to move because he did not want to hurt her. Edmond then exited the car, dropped a beer can on the ground and emptied out his ashtray. N.B. put on her clothes, and they proceeded to Tampa.
*270 When Edmond stopped at a convenience store outside of Brandon, N.B. exited the car, informing Edmond that she was going to call the police. The clerk at the store observed N.B. who was attempting to use the phone while Edmond placed his hand on the button so as to hang up the phone. They argued and N.B. asked the clerk to call the police. Edmond waited a few minutes longer before leaving. At about 2:00 o'clock that morning Edmond telephoned N.B.'S brother and told him that he had messed up. When asked where N.B. was, Edmond did not respond. Deputy Wagner arrived at the convenience store at approximately 2:30 a.m. N.B. directed him to a golf course located about three miles away. Deputy Wagner found tire tracks, a beer can, a paper bag and cigarette butts near a tree.
When Edmond was interviewed by Deputy Parks, he waived his Miranda rights, stating that he and N.B. had engaged in sex at a friend's house in Plant City. He further stated that they had an argument because Edmond had agreed to pay N.B. $100 in exchange for sex, but he only gave her $25. N.B. denied ever having been offered money for sex.
Edmond was convicted of attempted sexual battery resulting from the foregoing events. At the trial of the instant case, the state introduced the following evidence of collateral crimes pursuant to Williams.
A.H. met Edmond at Tampa Jai Alai in March 1986, and rode with him to a club. Thereafter, Edmond dropped A.H. off at her house; they had not discussed sex or exchanged phone numbers. A week later, about 3:30 or 4:00 a.m., A.H. heard the door bell ring. She looked through the window in the door but did not see anyone. The bell rang again, and thinking it was her son, A.H. opened the door. Edmond pushed his way into the residence and began striking A.H. in the face. Edmond told her he had been looking for her and wanted sex. Edmond continued to hit her, dragged her to a bedroom and threw her on the bed. Edmond held her down while he removed his clothes. Edmond removed A.H.'s panties and achieved vaginal penetration with his penis. When A.H. continued to struggle, Edmond placed his hands around her throat and forced his penis into her mouth. The victim started to vomit. Edmond struck A.H. on her head and face. About this time, A.H.'s son arrived home. Edmond told A.H. to be quiet and not cause any trouble, and then Edmond ran out of the residence.
Detective Herren interviewed Edmond on March 24, 1986, regarding the incident involving victim A.H. After being advised of his rights, Edmond gave the following statement. He stated that he first met A.H. at the Jai Alai in February. They met once again a week later at the Fronton. From there they went to a club where they remained until 2:00 a.m., when Edmond took A.H. home. About the first of March, Edmond stated that he and A.H. drove to an unnamed motel where they engaged in sexual intercourse. The week following that encounter they went to a lounge. According to Detective Herren, Edmond related to him that, on March 15, 1986, at approximately 4:30 a.m., Edmond went to A.H.'s house. A.H. let Edmond in the house and they proceeded to the bedroom, where they got undressed. At some point, they argued about $30 which A.H. had previously loaned Edmond and he pushed her. According to Edmond, they made up and while they were lying on the bed, A.H.'s son arrived home. A.H. told Edmond to leave, which he did after getting dressed.
Before evidence of a collateral offense can be legally admissible, "the points of similarity must have some special character or be so unusual as to point to the defendant." Drake v. State, 400 So.2d 1217, 1219 (Fla. 1981). "To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses." Heuring v. State, 513 So.2d 122 (Fla. 1987). This requirement of striking similarity applies even when identity is not at issue. Id.
*271 Here, aside from certain factors that are common to every sexual battery, the only points of similarity which exist between the two episodes outlined above are that both crimes began as a social contact; force was used in each instance, including Edmond's hands around the victim's throat, and both offenses occurred in the early morning hours. The dissimilarities, on the other hand, include the difference in the crime scenes, an initial failed attempt at sexual intercourse in one case but not the other, oral sexual battery as an aspect of only one of the two criminal episodes, and the perpetrator remaining dressed during the commission of one offense while removing his clothes in the other.
We, therefore, find significant dissimilarities exist in this case between the collateral crime and the charged offense to preclude the former's admissibility during the trial of the charged offense. The common aspects of the two crimes involved here are not "so unusual as to establish `a sufficiently unique pattern of criminal activity to justify admission of [the collateral crime] evidence.'" Peek v. State, 488 So.2d 52, 55 (Fla. 1986) (quoting Chandler v. State, 442 So.2d 171, 173 (Fla. 1983)).
Accordingly, we reverse the judgment and sentence and remand for a new trial to be conducted in a manner consistent with this opinion.
CAMPBELL, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).