619 So.2d 394 (1993)
Riley STEWARD, Appellant,
v.
STATE of Florida, Appellee.
No. 92-893.
District Court of Appeal of Florida, First District.
May 28, 1993.
*395 Nancy A. Daniels, Public Defender, Nada M. Carey, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., for appellee.
KAHN, Judge.
We find error in the lower court's admission of collateral crime evidence during the course of Steward's trial on the charge of lewd and lascivious assault on a child under the age of 16. Having thoroughly reviewed the record, however, we find such error to have been harmless, and affirm Steward's conviction and sentence. Section 924.33, Fla. Stat. (1991).
On the day in question the victim, M.R., a 10-year-old girl, went to Jacksonville Beach for an outing with her mother, Sheila, and her mother's friend, Robin. M.R. entered the ocean by herself to swim. A man unknown to her approached her and told her that if she screamed or turned toward the beach so that anyone could see her face he would cut her. The man then positioned himself with his chest against M.R.'s back, reaching his arms around her and fondling her vagina.
Willard Roberson was a Georgia resident vacationing at Jacksonville Beach with his family. He saw a young girl with her back pressed against a man's chest, and noticed that the man had his arms around the girl. Roberson observed this activity for some three to four minutes, at which time he noticed that the young girl was crying. At about that time, Sheila and Robin appeared. Roberson spoke to them briefly and then went to get help.
Sheila stated she had lost sight of M.R., so she and Robin went to look for the child. *396 Looking out into the water, Sheila saw a girl, but thought it could not be her daughter because the girl was standing so close to a strange man. Upon approaching closer, however, Sheila recognized her daughter and saw that the man had his arms around the child. Robin observed the same thing and called out to M.R.
Roberson observed the activity he described from a distance of 15 to 20 yards. Sheila and Robin observed the activity from 15 feet. Mr. Roberson, Sheila and Robin each identified Steward as the man who had his chest pressed up against M.R.'s back and his arms wrapped around M.R.M.R. also positively identified the defendant.
Having presented the foregoing evidence, the prosecutor called two additional witnesses, Jodi and Deborah. The trial court had previously heard the testimony of these two witnesses at a pretrial hearing conducted pursuant to the state's Notice of Other Crimes, Wrongs or Acts Evidence. Over objection both at the pretrial hearing and at trial, the court admitted testimony from Jodi and Deborah.
Steward is Jodi's uncle. Six years before the incident involving M.R., Jodi and Steward were both at Jodi's grandmother's house. Steward asked Jodi to sit on his lap so he could help her with her homework. While Jodi was sitting on Steward's lap, he placed his hand under her panties and fondled her vagina.
Deborah is Steward's stepdaughter. When Deborah was 11, some 12 years before the incident involving M.R., Steward came into Deborah's room, removed her pajamas and fondled her. Steward then engaged in a regular course of sexual activities with Deborah over the next four years.
Appellant argues, and we agree, that the testimony of Jodi and Deborah was not admissible under the rule established in Heuring v. State, 513 So.2d 122 (Fla. 1987), and applied by this court in Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. denied, 529 So.2d 693 (Fla. 1988). The supreme court's very characterization of the rule, and its rationale, in Heuring, belie its application to the present facts:
Cases involving sexual battery committed within the familial context present special problems. The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eyewitness and corroborative evidence is scant. Credibility becomes the focal issue. In such cases, some courts have in effect relaxed the strict standard normally applicable to similar fact evidence. These courts have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan or design, even though the distinction between sexual design and sexual disposition is often tenuous. We find that the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect.
513 So.2d at 124-125.
The present case does not involve a familial or custodial context between the victim and the defendant.[1] The victim did not know the perpetrator.[2] The victim was clearly not the sole eyewitness, and corroborative evidence was readily available and produced by the state. Thus, in this case, the trial court should have applied the traditional collateral crime rule as codified in section 90.404(2)(a), Florida Statutes (1991):

*397 Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Urging affirmance, the state argues that evidence of Steward's molestation of the two other girls was admissible because it was relevant to prove identity, absence of mistake, opportunity, intent, and knowledge. While the state has faithfully recited the terms of the statute in making this argument, it has failed to clearly articulate why this particular collateral crime evidence is probative as to any of the items enumerated in the statute, and even more to the point, has failed to demonstrate an issue in the case as to any of these items, with the possible exception of identity. Although defense counsel, in his opening remarks to the jury, stated that the jury would have to determine whether Mr. Steward is the person who actually committed the offense, no evidence presented in this case rebutted, contradicted, or even substantially impeached the testimony of the various eyewitnesses and the victim. Even were we able to conclude that identity was a legitimate issue, we would have great difficulty in stating that the testimony given by Jodi and Deborah tended to prove that Steward was the one who committed the crime against M.R.
We conclude that in this case the evidence in the form of testimony from the victim and eyewitnesses is so overwhelming that any error in admitting testimony from Jodi and Deborah is harmless. The harmless error test places the burden upon the state to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or that there is no reasonable possibility that the error contributed to the conviction. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). Erroneous admission of collateral crimes evidence is presumptively harmful. Czubak v. State, 570 So.2d 925 (Fla. 1990). Nonetheless, the erroneous admission of such collateral crimes evidence is subject to the harmless error analysis as set forth in DiGuilio. Keen v. State, 504 So.2d 396 (Fla. 1987); State v. Lee, 531 So.2d 133 (Fla. 1988). Fully recognizing the stringent requirements of our obligation as a reviewing court under the DiGuilio standard, we have taken to heart the instructive words of Justice Barkett:
[Evaluating harmless error] requires more than a mere totalling of testimony, and, in most instances, more than a mere reading of a portion of the record in the abstract. It entails an evaluation of the impact of the erroneously admitted evidence in light of the overall strength of the case and the defenses asserted... . It must, in most cases, be evaluated through the examination of the entire trial transcript.
Ciccarelli v. State, 531 So.2d 129, 132 (Fla. 1988) (Barkett, J., with two justices concurring, three justices concurring specially, and two justices concurring in result only).
Having determined that the evidence as recounted by the state presents a prima facie case of harmlessness, we have evaluated the record in order to determine whether the result would have been the same absent the error. Ciccarelli, supra, at 131. The collateral crimes evidence was not made a feature of the trial below. The testimony of three eyewitnesses placed Steward in the water with his arms around the victim. The witnesses were also able to trace Steward from the spot in the water where he committed the criminal assault to a point some 100 yards up the beach where he emerged from the water. The authorities took Steward into custody within 10 minutes of the assault. Thus, the erroneous admission of the testimony of the other two girls will not entitle Steward to a new trial. See, Duckett v. State, 568 So.2d 891, 893-895 (Fla. 1990) (in prosecution for sexual battery and first degree murder of 11-year-old girl, trial court's erroneous admission that on two occasions defendant engaged in act of oral sex with a "petite" 17-year-old *398 girl was harmless, "given all the other evidence ...").[3]
AFFIRMED.
ALLEN and WOLF, JJ., concur.
NOTES
[1] Professor Ehrhardt has observed that although Heuring appears to limit its theory of admissibility to acts involving sexual battery within a familial context, the rationale of the case may extend to the admission of sexual acts upon other children. Ehrhardt, however, conditions this observation to some extent: "The rationale would also seem to be applicable whenever the defense in a sexual battery prosecution is that the victim fabricated the incident, rather than that the wrong person has been charged." Ehrhardt, Florida Evidence, § 404.18 (1993 Ed.).
[2] "In cases where the victim is not acquainted with the defendant, the issue is whether the victim was mistaken in the identification of the defendant, rather than whether the victim is fabricating." Id.
[3] In the present case it is somewhat difficult for us to understand why the prosecutor, having proved an extremely strong case against the defendant, nonetheless went forward with inappropriate collateral crimes evidence. Having said this, we fully recognize that the trial judge made the ultimate decision to admit the evidence. It is the prosecutor, and not the judge however, who has days, weeks or even months to put a criminal case together and to make informed good faith decisions as to whether a proposed piece of evidence will be properly admissible. This is an obligation that should be taken very seriously in these types of cases. Although he allowed the evidence in, the trial judge below stated on the record, "I don't feel good about making that ruling but I think it's marginally admissible ... I think it is admissible but I don't have any great confidence that's right." "Although a conviction in a strong case may be affirmed on a harmless error theory, that is not an invitation to prosecutors to commit the error... ." Molina v. State, 447 So.2d 253, 255 (Daniel S. Pearson, J., concurring), rev. denied, 447 So.2d 888 (Fla. 1983).