624 So.2d 757 (1993)
Augustas J. RAWLS, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1146.
District Court of Appeal of Florida, First District.
September 14, 1993.
Rehearing Denied October 28, 1993.
*758 Nancy A. Daniels, Public Defender and Josephine L. Holland, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Carolyn J. Mosley, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, for appellee.
ERVIN, Judge.
Appellant, Augustas J. Rawls, seeks review of a conviction for sexual battery on a person less than 12 years of age. He contends that the trial court erred by allowing Williams[1] Rule evidence from three collateral-crime witnesses and by modifying the Williams Rule jury instruction to include corroboration of the victim's testimony as a proper use of collateral-crime evidence. We affirm as to the first issue and reverse and remand as to the latter.
Initially, we conclude that both issues were properly preserved. Appellant filed a written objection to the use of the similar-fact evidence, and the parties argued the objection at the outset of the trial. See Thomas v. State, 599 So.2d 158, 159-61 n. 1 (Fla. 1st DCA) (objection preserved where the defendant objected to the similar-fact evidence during the state's proffer at the outset of the trial), review denied, 604 So.2d 488 (Fla. 1992). As for the modified jury instruction, defense counsel clearly objected to the modification at the time it was discussed, which was immediately prior to the jury charge. See Buford v. Wainwright, 428 So.2d 1389, 1390 (Fla.) (objection to erroneous instruction properly preserved where counsel objected during charge conference), cert. denied, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 331 (1983).
Appellant was charged by information with sexual battery on a person less than 12 years of age, to wit: nine-year-old M.R., a male youth, on or about July 25, 1991. Prior to trial, the state filed notices of intent to offer collateral-crime evidence of similar conduct committed by appellant against three other *759 boys. Over appellant's objection, the state was allowed to introduce the same.
In regard to the charged offense, M.R.'s mother recounted that she had met the defendant through a neighbor; that the defendant said he was having problems where he lived; and that he desired to live with a family who had children. Approximately six months thereafter, upon appellant's agreement to pay $200 per month in rent and to provide his own food, the defendant moved in with the victim's family and remained in their home for ten days. He slept in M.R.'s room while M.R. slept on the couch in the living room. The victim testified that the defendant touched his penis and placed it in his mouth. This conduct occurred in both the living room and occasionally in the kitchen when no one else was present. M.R. did not tell anybody, because he was afraid.
The state's collateral-crime evidence consisted of the testimony of 16-year-old J.F., who stated that the defendant had lived with his family. The defendant was good to his family while he lived with them and bought J.F. gifts, gave him money, and took him fishing. J.F. called him "Uncle Gus." J.F. testified that the defendant put his mouth on his penis. He was approximately eight or nine when this first occurred. No one else was present. The defendant told J.F. not to tell anyone what he did to him.
J.K.F., J.F.'s brother who was 20 years old at the time of the trial, testified that the defendant was his mother's friend and had moved in with the family. J.K.F. was approximately eight or nine when the defendant first came to live with them, and he lived with them for several years. The defendant was good to the family and to him. He bought J.K.F. clothes and toys, paid the bills, and paid rent to his mother. J.K.F. testified that the defendant put his mouth on his penis when no one was around and that he told him not to tell anyone. This usually occurred while J.K.F. was in his bedroom between 2:30 and 3:00 a.m.
Finally, T.S., then 12 1/2 years old, testified that he met the defendant when he was approximately nine years old. The defendant moved in with his family and helped them to pay bills and groceries. The defendant was good to him  he bought him clothes and drinks. T.S. testified that the defendant first put his mouth on the boy's penis while the two were in the defendant's trailer, and that similar acts occurred after the defendant moved in with T.S.'s family. No one was present during these occurrences, and the defendant told T.S. not to tell anyone. The defendant lived with his family approximately one to one and a-half years.
Turning to the merits of the issue pertaining to the admission of the Williams Rule evidence, the standard for the admission of same was established in Heuring v. State, 513 So.2d 122 (Fla. 1987), wherein the state was permitted to introduce certain collateral evidence disclosing that the defendant had sexually battered his daughter approximately 20 years before he was charged with sexually battering his stepdaughter. There, the supreme court, recognizing that collateral-crime evidence is inherently prejudicial and that such evidence is inadmissible if solely relevant to bad character or propensity, determined that in order to minimize the risk of a wrongful conviction, similar-fact evidence must meet a strict standard of relevance. The charged and collateral offenses must not only be strikingly similar, but must also share some unique characteristic or combination of characteristics which set them apart from other offenses. Id. at 124. In addition, the evidence must be relevant to a material fact at issue in the cause at trial, such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident. Id. (citing § 90.404(2)(a), Fla. Stat.).
Recognizing that special problems inhere in cases involving sexual battery within the familial context, the court continued that in such cases the victim knows the perpetrator and identity is not an issue. Moreover, the victim is usually the sole witness and corroborative evidence is scant. Therefore, the credibility of the victim is the focal issue. The court observed that while some jurisdictions have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan, or design, the better approach is to treat such evidence as simply relevant to corroborate the victim's testimony, and to consider that *760 in such cases the similar-crime evidence's probative value outweighs its prejudicial effect. Id. at 124-25.
The collateral-crime evidence in the instant case satisfies the Heuring test. First, the charged offense and the collateral offenses were strikingly similar and shared some unique characteristic or combination of characteristics which set them apart from other offenses. Appellant befriended the boys' mothers, arranged to move into their homes, paid rent and bought groceries and was generous to all the family members, and then, in the same manner, sexually molested male youths of approximately the same age in their homes while no other person was present while instructing them not to tell anyone what had occurred. Second, the evidence was relevant to prove a material fact in issue, i.e., opportunity, plan, and/or absence of mistake or accident. This is so because the appellant's defense at trial was that he did not commit the charged offense, and that M.R. was mistaken. Therefore, we find no error in the admission of the Williams Rule evidence.
In so saying, we find no merit to appellant's argument that the admission of the collateral-crime evidence was unduly prejudicial, because of the quantum of evidence (the testimony of three witnesses), and because it became the feature of the trial. The fact that three collateral-crime witnesses testified for the state does not necessarily give rise to a finding of prejudice. See Coleman v. State, 484 So.2d 624 (Fla. 1st DCA 1986) (admission of collateral-crime evidence from three other victims was proper in sexual battery case of child under the age of 11). Moreover, it was the defense counsel's own trial tactics, i.e., calling numerous witnesses to impeach the credibility of the collateral-crime witnesses, which emphasized the collateral-crime evidence. See Travers v. State, 578 So.2d 793 (Fla. 1st DCA) (in sexual battery trial involving younger sister, similar-fact evidence involving sexual battery of older sister clearly became feature of trial, both as to quantum of evidence and arguments of counsel; however, excessive emphasis on such evidence was attributable to defensive efforts and thus did not require reversal), review denied, 584 So.2d 1000 (Fla. 1991).
Considering next the merits of the second issue, although the standard Williams Rule instruction[2] essentially tracks Section 90.404(2)(a), Florida Statutes, the judge modified the standard instruction over defendant's objection by adding the following underscored language regarding victim-corroboration:
The evidence which has been admitted to show similar crimes, wrongs, or acts allegedly committed by the defendant will be considered by you only as that evidence relates to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident on the part of the defendant or to corroborate the testimony of the alleged victim in this case. However, the defendant is not on trial for a crime that is not included in the information. (Emphasis added.)
Because there was no evidence in the case below that the charged offense arose within a familial or custodial setting, the instruction was an incorrect statement of the law, because section 90.404(2)(a) does not list victim corroboration as a proper purpose for similar-fact evidence, and Heuring only authorizes use for corroboration in a familial or custodial situation. The effect of this erroneous instruction was to inform the jury that similar-fact evidence was admissible for the purpose of vouching for the credibility of the victim's testimony; a result which is clearly contrary to established case law. See, e.g., Tingle v. State, 536 So.2d 202, 205 (Fla. 1988); Turtle v. State, 600 So.2d 1214, 1221-1222 (Fla. 1st DCA 1992); Page v. Zordan, 564 So.2d 500, 501 (Fla. 2d DCA 1990); Fuller v. State, 540 So.2d 182, 184 (Fla. 5th DCA 1989).
Applying a harmless error analysis, see, e.g., Bello v. State, 547 So.2d 914, 916 (Fla. 1989) (although court erroneously gave instruction on transferred intent, because it was inapplicable under the facts, such error was harmless), we cannot say that the court's instruction at bar "did not contribute to the *761 verdict." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). This is especially true, because the state expressly argued during its closing statements that the evidence could be used to corroborate the victim's testimony.
AFFIRMED in part, REVERSED in part, and REMANDED for new trial.
ZEHMER, C.J., and WEBSTER, J., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Fla.Std.Jury Instr. (Crim.) 50.