PER CURIAM.
Kem Dixon challenges his convictions for first-degree felony murder and attempted armed robbery. Of the two issues he raises on appeal, only one has merit. We agree that the trial court erred in allowing the admission of collateral crimes evidence.
In the early morning hours of December 26, 1989, Raymond Sobczak, the night auditor at the Best Western Motel in Tampa, was shot to death while on duty as he stood behind the cash register. Danny Noles, a security officer on duty at the motel, told the police that the suspect was a black male. Mr. Noles was unable to testify at trial because of mental incapacity.
Statements that Dixon made to two county jail inmates implicated him in this offense. Both inmates testified that they previously knew Dixon from around their neighborhood. One of the inmates, Antonio Johnson,[1] testified that Dixon told him the following information about an incident at the Best Western motel. Dixon and Patrick Johnson had driven to the Best Western with the intention of robbing it. Both Dixon and Patrick Johnson entered the motel. Patrick Johnson shot the man behind the counter, and the two of them left. The second inmate, Sonny Glymp, testi- *1338 fled that he spoke to Dixon about the robbery at the Best Western and that Dixon admitted that he and Patrick Johnson were there. Glymp further testified that Dixon stated he went to the door and called for Johnson and then both of them ran back to the car and left.
Over objection the trial court permitted the state to introduce evidence of Dixon’s role in another robbery and murder that had occurred a month earlier in the Hyde Park area of Tampa. The state presented the evidence to establish Dixon’s identity as a participant in the Best Western offenses. Antonio Johnson testified regarding the following statements that Dixon made to him. Dixon and Patrick Johnson tried to rob some men at some apartments in Hyde Park. Johnson wrestled with one of the men, and the man ran. Dixon then shot the fleeing man. Glymp testified that Dixon made the following statement to him about the Hyde Park shooting. While Dixon and Patrick Johnson were in Hyde Park attempting to rob two men, a struggle ensued. One of the men attempted to take a gun away from Dixon, and the gun went off.
Glymp also testified that in early January 1990 he was riding in a car with Dixon and Patrick Johnson when he saw a gun which his girlfriend had loaned to Patrick Johnson in December 1989. Glymp took back the gun, and later the police seized it.
Shell casings were collected from both the Hyde Park and Best Western crime scenes. A firearms identification expert testified that the shell casings from both crime scenes came from the same gun seized from Glymp.
This court, in Edmond v. State, 521 So.2d 269, 270 (Fla. 2d DCA 1988), citing previous Florida Supreme Court decisions, stated that:
Before evidence of a collateral offense can be legally admissible “the points of similarity must have some special character or be so unusual as to point to the defendant.” Drake v. State, 400 So.2d 1217, 1219 (Fla.1981). “To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must not only be strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses.” Heuring v. State, 513 So.2d 122 (Fla.1987).
In the instant case, there are no striking similarities or unique characteristics which link the two offenses.
The state, citing Amoros v. State, 531 So.2d 1256 (Fla.1988), argues that the trial court correctly admitted the evidence of the Hyde Park murder to establish identity because it linked the defendant to the gun used in the later killing. In Amoros, the defendant was convicted of the first-degree murder of Omar Rivero, who was the current boyfriend of Veronica Simmonds, the defendant’s ex-girlfriend. While Simmonds was reporting the defendant’s threats against her to the police, the defendant broke into her home and shot Rivero dead. Two of Sim-monds’ neighbors picked the defendant’s picture out of a photopack as being the man who asked them if a lady and a little girl lived in the Simmonds’ apartment. This occurred just minutes before the neighbors heard gunshots. The bullet retrieved from Rivero was identified as having come from a gun found several miles from the scene. That gun also was determined to have fired the bullet in an earlier homicide where the defendant “was seen holding the gun immediately following the shooting.” Id. at 1257. The court noted that “the use of the gun in the prior incident was the only evidence the state had to link Amoros [the defendant] to the killing of Rivero.” Id. at 1259. The evidence of the earlier shooting was admitted to prove identity. The Amoros court, distinguishing this situation from a typical Williams rule type of case, stated:
The focus in this instance was establishing Amoros’ prior possession of the specific weapons which caused Omar Rivero’s death. Perkins [State v. Perkins, 349 So.2d 161 (Fla.1977) ] is clearly distinguishable because in that case the focus was on a similar pattern of criminal conduct rather than the linking of a defendant to a critical piece of evidence. We conclude the evidence was relevant and its *1339 prejudice did not substantially outweigh its probative value.
Id. at 1260.
In Amoros, the state argued, and the court agreed, that the facts of the first homicide were intertwined inextricably with the second. The instant ease is very different. Unlike Amoros, there was no need to introduce testimony of the first homicide to link Dixon to the murder weapon. Dixon, unlike Amo-ros, also made statements implicating himself in the crime. The state could have proved the case without any reference to the Hyde Park murder. In Amoros, there was eyewitness testimony of the prior shooting. In the instant case, only Dixon’s statements linked him to the Hyde Park murder. Also, the prejudicial effect in Amoros was less in that the testimony of the first shooting indicated the victim started the fight and in fact drew the gun. The jury also heard that Amoros was acquitted in the first shooting.
In summary, we conclude that the collateral crimes evidence in this instance did not meet the strict standards for admission mandated by Edmond. We also conclude that the facts of the two shootings were not intertwined inextricably as they were in Amoros.
Accordingly, we reverse and remand for a new trial.
PARKER, A.C.J., BLUE, J., and LUTEN, CLAIRE K., Associate Judge, concur.

. Antonio Johnson was not related to codefend-ant Patrick Johnson. Antonio Johnson already had been sentenced to state prison and was awaiting transfer at the time of his conversation with Dixon.