747 So.2d 429 (1999)
Santiago GUTIERREZ and Carmen Gutierrez, Appellants,
v.
STATE of Florida, Appellee.
Nos. 98-3127, 98-3463.
District Court of Appeal of Florida, Fourth District.
December 15, 1999.
*430 Jack A. Fleischman and Sidney Z. Fleischman of Fleischman & Fleischman, P.A., Palm Beach, for appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Debra Rescigno, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Santiago and Carmen Gutierrez appeal after a jury convicted them of sexual activity with a child and conspiracy. They argue the trial court erred in not allowing them to present their entire taped statements to the jury, and in not allowing them to elicit certain testimony of witnesses. We agree in part and, thus, reverse their convictions and sentences.

Background
The victim was 15 at the time of the subject incident. She testified that her Aunt Carmen and Uncle Santiago paid for her to come from Puerto Rico to live with them in the United States. She testified they were very strict with her.
The state's theory and the victim's account of events were that the Gutierrezes asked the victim to conceive a child for them. One night, Carmen allegedly gave the victim alcohol and held her hand while Santiago had sexual intercourse with her. The following day, the victim told her friend at school what happened. Her friend later told a teacher, who called police.
An officer took the victim to the police station where she made a taped call to Carmen and Santiago. The transcript of that call reflects the following:
Victim: I'm in an office.
Carmen: Why?
* * * *
Victim: Because I was talking to a girl at school ... [a]nd I told her what had happened about everything with [Santiago] and she went to the office and I told her not to tell anyone but she went and told anyway....
* * * *
Carmen: Okay, why did you open your mouth.... You don't know the problems now. Do you know that [Santiago] could go to jail[?] Now they are going to come and arrest him. Better you say that you got *431 mad at us and you said that, and if you want I will send you back to Puerto Rico....
* * * *
[T]hose kinds of things you don't tell, okay.... [Y]ou were the one that had the idea anyway....
Santiago: (In Background) They are lies and she said it because she was mad at us....
* * * *
[b]ecause we don't let her go out....
* * * *
Victim: What should I tell them....
Carmen: Tell them that you were mad at us Saturday because what we said about that boy.
At trial, the Gutierrezes sought to ask the victim about a conversation the victim had had with Carmen's co-worker, wherein the victim allegedly stated that an older boy had raped her. They also sought to ask her whether she lied in Puerto Rico about her cousin having raped her. Finally, they sought to inquire into her living conditions in Puerto Rico to show that she came to the States because she could not follow her family's rules. The court prohibited these inquiries.
The state then introduced Carmen's taped statement that she previously made to the lead detective and asked permission to publish a portion of it. At that point, the Gutierrezes advised the court that they sought to introduce the tape in its entirety under the rule of completeness. Specifically, they argued that the following two portions of the tape would explain Carmen's state of mind during her taped telephone call with the victim:
Carmen: Her mother sent her down to... uh ... he [sic] mother and her sister (inaudible) and she was missing her two months. Her mother didn't know where she was.
* * * *
Then when she found her, she said this guy raped her and do [sic] a lot of things to her. Then her mother got so very upset, so then [sic] gave her to her grandmother.
The court denied their request. It then published to the jury the portion of Carmen's tape with the above sections deleted from same.
The lead detective testified briefly as to his taped conversation with Santiago. The state advised that it would not seek to publish to the jury any of Santiago's tape, however. Nevertheless, the Gutierrezes advised the court that they wanted to introduce the tape both under the rule of completeness and also to show the detective's tone of voice. The court denied their request.
During their case-in-chief, the defense proffered the testimony of three witnesses. First was Maria Valdez, the mother of the fifteen-year old victim. Valdez was to testify that she maintained strict household rules when the victim lived with her; because the victim did not like the rules, she created serious problems for the mother, including reporting her to "social services."
The second proffered witness was the victim's aunt, Isabelle Rodrigues. She would have testified that she took the victim into her home in Puerto Rico and established strict rules for her based on conversations with the victim's mother. According to Rodrigues, the victim had difficulty following the rules. Before leaving Rodrigues's home, the victim accused her twelve-year old cousin of raping her; when Rodrigues confronted the victim about the allegation concerning her son, the victim "sat in the middle of the living room floor and laughed."
The third proffered witness was Magdelena Ramos, the victim's grandmother. Ramos would have testified that when the victim moved in with her, she attempted to impose strict rules about when the girl could go out, what she could wear, whom she could see, and what time she could use *432 the phone. According to Ramos, the victim refused to live within the confines of these rules, made it difficult for Ramos to live, and "gave her a hard time."
The trial court disallowed this testimony and precluded the defense from cross-examining the victim about it.
The Gutierrezes also testified in their defense. They maintained that Santiago could not obtain an erection at the time the incident allegedly occurred. In support of this contention, they offered the testimony of a urologist who opined that Santiago was impotent at the time in question. On cross-examination, Santiago stated that he could not remember exactly what the detective said to him at one point during the taped interview. The state used the transcript of the taped interview to impeach this statement.
The Gutierrezes were convicted as charged. Carmen was sentenced to 120 months in the Department of Corrections, and Santiago was sentenced to 210 months. This appeal followed.

Rule of Completeness
Relying on the rule of completeness, the Gutierrezes argue that the trial court erred in not allowing them to present to the jury their entire taped and written statements made to the detective. Section 90.108, Florida Statutes (1997), also known as the rule of completeness, states,
(1) When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously. An adverse party is not bound by evidence introduced under this section.
§ 90.108(1), Fla. Stat. (1997).
Under this rule, we believe the court abused its discretion in not admitting Carmen's entire statement to the jury. Carmen was entitled, in the interest of fairness, to have the jury consider her entire statement to show the context in which it was made, and to avoid any misleading inferences. See Larzelere v. State, 676 So.2d 394, 401 (1996) (explaining the purpose of the rule is to avoid taking statements out of context and, thus, misleading the trier) (citation omitted).
However, we do not believe the court erred in not allowing Santiago to introduce his statement. Since the state never introduced Santiago's taped or written statements during its case-in-chief, the rule of completeness did not come into play. See Vazquez v. State, 700 So.2d 5, 8-9 (Fla. 4th DCA 1997) (explaining that counsel may not seek to invoke section 90.108 during cross-examination or during the party's own case) (citation omitted), rev. granted, 705 So.2d 902 (Fla.), dismissed, 718 So.2d 755 (Fla.1998). The only time he could have made any argument for admission of his tape under section 90.108 was during his cross-examination by the state. However, because the state only introduced a couple of lines of his written statement in order to impeach his testimony on a collateral matter, we do not believe admission of the rest of his statement would have been either necessary or fair.

Exclusion of Proffered Testimony
The Gutierrezes also claim the court erred in excluding the proffered testimony of the victim's mother, aunt, and grandmother. They argue their testimony went directly to their defense that the victim fabricated the charges to avoid living conditions that she thought were too strict. We agree.
In Rivera v. State, 561 So.2d 536 (Fla. 1990), the supreme court held that a defendant may offer Williams[1] rule evidence *433 under section 90.404(2)(a), Florida Statutes (1985).[2] The court wrote that,
where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission. § 90.404(2)(a), Fla. Stat. (1985). However, the admissibility of this evidence must be gauged by the same principle of relevancy as any other evidence offered by the defendant.
Id. at 539; see State v. Savino, 567 So.2d 892 (Fla.1990); In the Interest of K.C., 582 So.2d 741, 742 (Fla. 4th DCA 1991); Estano v. State, 595 So.2d 973, 975 (Fla. 1st DCA 1992). The line of cases following Rivera establishes a defendant's right to offer Williams rule evidence, subject to the same rules of relevance and the weighing of probative value that apply when the state seeks to introduce such evidence. See Savino, 567 So.2d at 894; Vannier v. State, 714 So.2d 470, 472 (Fla. 4th DCA 1998).
This is a case involving sexual assault in a familial context. The defendants were the aunt and uncle with whom the victim was living at the time of the incident. For such cases, the supreme court has created a special category of Williams rule evidence. In Heuring v. State, 513 So.2d 122, 125 (Fla.1987), the supreme court held that in cases involving sexual battery within a familial situation, evidence that a defendant committed other sexual batteries on another family member was admissible as "relevant to corroborate the victim's testimony" that the defendant had committed sexual abuse upon the victim. As the supreme court explained in State v. Rawls, 649 So.2d 1350, 1352 (Fla.1994), the holding in Heuring grew out of the "special problems" presented in such cases:
Because the victim knows the perpetrator, the enumerated purposes of the Williams rule, such as identity, are not at issue. Also, the victim is typically the sole eyewitness and corroborative evidence is scant. The victim's credibility is the focal issue. Accordingly, we held that in the narrow class of cases involving sexual battery within a familial context similar fact evidence is admissible to corroborate the testimony of the victim.
(citations omitted); see Saffor v. State, 660 So.2d 668, 670-71 (Fla.1995).
Under Rivera, both the state and the defendant may offer evidence under section 90.404(2). The credibility of the victim is the central issue in cases involving sexual assault committed within the familial context. See Rawls, 649 So.2d at 1352; Heuring, 513 So.2d at 124-25. In such cases, if the state may introduce similar fact evidence of other sexual assaults to bolster the credibility of the victim, it follows that the defense may offer similar fact evidence to support its theory of the case and deflate the credibility of the victim.
The proffered evidence demonstrated that "additional showing of similarity" to the defense version of the case so as to render such testimony admissible. See Saffor, 660 So.2d at 672. The defense contended that the victim's allegations were false and that her motive for lying was that she resented her aunt and uncle's attempts to impose limits on her conduct. According to the proffered testimony, twice in Puerto Rico the victim's reaction to similar family efforts to control her was to fabricate accusations of abuse; she reported her mother to a social service agency and accused her twelve-year old cousin of rape. Like the defendants, other family members had difficulty in controlling and disciplining the victim. The defendants should have been given the opportunity to present such evidence to the jury and to *434 argue that the defendant had behaved in their case as she had in the past in similar circumstances.
For these reasons, the defense should have been allowed to elicit the proffered testimony summarized above and to cross examine the victim about the subject of the testimony.

Closing Arguments
The Gutierrezes also make note of the state's comments in closing arguments as to Santiago's failure to use Viagra. While we would not reverse solely on this point, we caution the state on retrial to refrain from making arguments outside the evidence.
As to the remaining issues on appeal, we affirm as unpersuasive.
AFFIRMED in part; REVERSED in part.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] That section provides that "[s]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." § 90.404(2)(a), Fla. Stat. (1985).