STONE, J.
Michael Gutherez’s conviction and sentence for capital sexual battery of a child under twelve is affirmed. The trial court’s admission of collateral crime evidence was not an abuse of discretion.
The five-year-old victim, E.R., and her mother, Lori, lived in the home of her mother’s friend, April, April’s nine-year-old child, C.C., and April’s boyfriend, Gutherez. Gutherez supervised the two children when the mothers were at work.
The evidence reflects that on the date in question, the two children were home alone with Gutherez. Gutherez told E.R. to come to his room and get on the bed. C.C. was also present. He told E.R. he wanted to take her temperature. She did as she was told on that day just as she had cleaned her room whenever she was asked to do so by Gutherez. As she lay face down on Gutherez’s bed, he placed a pillow over her head, removed her underwear, climbed on top of her, and used his “front private part” to penetrate her “back private part.” He then penetrated her “front private part.” When he stopped, Gutherez told her never to tell anyone what had happened. Despite his warning, E.R. told *17 April what had happened as soon as she came home; however, April dismissed the child’s story as a lie.
When Lori returned home, E.R. was crying hysterically, but Lori was unable to find out what was wrong. The next day, Lori took E.R. to her bedroom so that she could find out why she had been crying. At that time, Gutherez asked the child, “What’s the problem,” in a tone he had not previously used with the children. He then went inside his bedroom and locked the door.
E.R. told Lori what had happened. Shocked by what she heard, Lori examined E.R.’s vaginal area and discovered it was red. Enraged, she went to confront Guth-erez. Gutherez refused to open the door and speak with her. Next, she confronted April and picked up the phone to call the police. As she was dialing, the two women struggled over the phone and April disconnected the phone from the wall.
The police were able to trace the call and arrived approximately twenty minutes later. On that day, members of the child protection team interviewed E.R. and conducted a physical exam.
At trial, the court conducted a hearing to determine the admissibility of C.C.’s testimony alleging that Gutherez sexually abused her five times prior to the incident in question. In ruling the testimony admissible, the court concluded that the evidence was not sufficient to determine that a “familial” relationship existed. The trial court stated:
The relationship must be one in which there is a recognizable bond of trust with the defendant similar to the bond that develops between a child and her grandfather, uncle, or guardian where an individual legitimately. exercised parental authority of the child, or maintains custody of a child on a regular basis.
[[Image here]]
In this, in our situation ... the defendant and the mother were not in a romantic relationship as it existed in some of the familial cases. They were basically roommates. He acted occasionally as a babysitter. There was no evidence he exercised any type of parental type of authority of the child. And there is no evidence that the child looked to him as a family member or a parent.
Notwithstanding the absence of a familial relationship, the court admitted the similar fact evidence by C.C. for purposes of corroborating E.R.’s testimony.- In doing so, the court found that the collateral offense — the sexual batteries on C.C.— were “strikingly similar” to the offense charged for the following ten reasons:
1) In both cases there was both vaginal and anal intercourse.
2) In both cases the child testified that the defendant was wet.
3) The child’s ages are similar, 5 years in one case, and 6 and 7 in the collateral case.
4) Both children are female.
5) Both children resided in the home where the defendant resided.
6) And in both cases the events took place in the defendant’s bedroom.
7) In both cases the children have blonde hair.
8) In both cases ... the child was under the defendant’s supervision at the time of the offense.
9) In both cases the mothers of the children were at work.
10) And in both cases the defendant told the victim not to tell anyone.
C.C. testified that she met Gutherez, her mother’s boyfriend, three years earlier, when she was six years old. Her first *18 sexual encounter with Gutherez occurred at a hotel room in Indiana when she was left alone with Gutherez and her four-year-old brother. Gutherez pulled C.C. to the floor of the hotel room and used his “front private part” to give her a “bad touch” on her “back private part.” On that same night, Gutherez penetrated C.C.’s “back private part” a second time.
The third incident occurred on another evening, when C.C.’s mother was at work and Gutherez was supervising C.C. at his parents’ house. In one of the bedrooms of the house, Gutherez instructed C.C., who was then seven years old, to take down her pants and lay on the bed. Again, Gutherez penetrated C.C.’s “back private part” with his “front private part.” Gutherez ordered C.C. to take a bath.
On another evening when C.C.’s mother was not at home, Gutherez was left alone with C.C. and her brother. Gutherez ordered C.C. into his bedroom and removed her underwear. He then penetrated her “back private part” for the fourth time. He also penetrated her “front private part.” Afterward, he told C.C. to take a bath and warned her that if she told anyone, he would kill her. All five of the incidents C.C. described occurred at night when her mother was not at home.
C.C. also testified that on the date of the assault on E.R., Gutherez ordered the two girls upstairs and into his room. He pulled down his pants and covered the girls’ heads with pillows. C.C. testified that the bed began to shake. Although she could not see E.R., she heard her crying. When the bed stopped shaking, Gutherez whispered instructions in C.C.’s ear to take E.R. for a bath.
The nurse with the child protection team examined C.C. She testified that there was no anal tearing found. However, she stated that this was not unusual, as the anus stretches and tends to leave less evidence of sexual abuse than would be found through a vaginal exam. Upon examining C.C.’s vaginal area, she found that there was no hymen tissue at all which she described as “abnormal” in a girl of C.C.’s age. C.C.’s vaginal exam led the nurse to conclude that C.C. had been subjected to penetration multiple times. In the case of E.R., the nurse also found no anal tearing, but found that her hymen tissue had been damaged and that part of it was missing. She testified that damage to hymen tissue of this sort was rare and was usually “clear evidence of penetration.”
The Williams rule,[1] as codified in section 90.404(2)(a), Florida Statutes (2000), provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,- or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
In Heuring v. State, 513 So.2d 122 (Fla.1987), the supreme court recognized an expanded application of the Williams rule for purposes of corroborating a victim’s testimony in the narrow class of cases where sexual battery on a minor occurs within a “familial” setting and the identity of the accused is not in issue. See also Saffor v. State, 660 So.2d 668 (Fla.1995). Such cases require special consideration because the victim is usually the only witness to the crime and his or her credibility is in issue when the accused, an adult family member, simply denies the allegations. See Heuring, 513 So.2d at 124. In State v. Rawls, 649 So.2d 1350, *19 1351 (Fla.1994), the supreme court went further, holding that even in the absence of a “familial” relationship, collateral crimes evidence is admissible to corroborate the victim’s testimony, provided it is “strikingly similar” to the principal crime.
In Rawls, the collateral crimes committed by the accused were “strikingly similar” in that Rawls had gained access to his victims in the same manner; he befriended the victims’ mothers, arranged to move into their homes, paid rent, and bought groceries. Rawls molested male youths of approximately the same age in their homes while no one else was present and warned them not to tell anyone what had occurred. The court opined that the charged and collateral offenses committed by Rawls clearly shared the unique combination of characteristics required to meet the strict standards of Williams rule. Id. at 1353-54.
In this case, the trial court properly applied Rawls. Its finding that the offenses were strikingly similar is supported by the record. Gutherez’s pattern of sexual abuse on C.C. and his sexual battery on E.R. shared several unique characteristics. Both are girls of approximately the same age, the incidents occurred in the home when their mothers were not present, both girls were subjected to anal intercourse, the incidents took place in or around a home bedroom, Guth-erez lived in the home with the victims and seized the opportunity to commit the crimes when he was left alone to supervise them. In each instance, he used his position of authority to order the children to assist him in committing the crimes. See Cadet v. State, 809 So.2d 43 (Fla. 4th DCA 2002).
Gutherez points out certain details of the crimes that are not similar: in E.R.’s case, she was abused only once, whereas C.C. was abused multiple times, and in E.R.’s case, a pillow was used to cover her face. We do not deem these differences significant.
Because we conclude that the trial court did not err in viewing the circumstances of the collateral crime incidents as strikingly similar under the Rawls standard, we need not resolve the state’s arguments that the relationship between Gutherez and E.R. should be deemed “familial” or that the evidence was sufficient to constitute a common plan under the statute.
As to all other issues raised, we also find no error or abuse of discretion. The judgment and sentence are affirmed.
FARMER and HAZOURI, JJ., concur.

. See Williams v. State, 110 So.2d 654 (Fla.1959).