FARMER, J.
It began with a purse snatching. Which led to charges of burglary of a car, robbery and aggravated battery on a senior citizen. The jury acquitted defendant of the battery charge but found him guilty of the other two. Not all of the trial was unremarkable and three issues engage our attention: the propriety of trying the case jointly with a co-defendant’s, the admission of evidence of other crimes of the defendant, and evidence of a gun found in the auto jointly occupied by defendant even though none of the charges necessarily concern a firearm. We find error in the other crimes and gun evidence and reverse for a new trial as to the two charges for which he was convicted.
The lady had just entered her car and was attempting to close the driver’s door. Suddenly someone yanked it open. A man reached his hand across the struggling driver, grabbed her purse and ran away. Nearby an eyewitness saw the man first run past him, reach into a car, struggle briefly with a lady inside and then run away with a white purse in his hand. He saw the snatcher enter an auto already occupied by another man. That auto immediately pulled away at a decisive pace. The witness called 911, while attempting to follow the fleeing auto and reporting its tag number. In due course, police stopped *729 the auto with the two men. Shortly thereafter at roadside, the witness identified both men as the ones he saw (one was defendant), along with their auto. The victim’s purse was found inside.
Defendant complains of having his case tried alongside that of his co-defendant. Two different juries were selected for the joint trials. These juries did not hear precisely the same evidence. The essential clash was they blamed each other. Little else about the common evidence created any conflict.
The joint trial issue turns on whether the trial judge abused discretion. The state argues that the evidence was “carefully laid out with respect to the participation and acts of each of the defendants before two separate juries” so that there was no way that the jurors could have been confused or improperly influenced in their decision. The State is correct. Moreover, there was no apparent conflict, other than pointing the finger at one another. In addition to the careful presentation of the evidence, we are unable to discern any legal antagonism between the defenses unfairly prejudicing this defendant. Because the juries were able to separate the facts relating to each defendant, we conclude that no abuse of discretion has been shown as to the joint trials.
We next consider the evidence of other crimes. The state presented testimony from three witnesses whose purses had been snatched near parked cars. One woman testified she and a friend had their purses grabbed by two black males with a gun outside of the Muddy Waters restaurant in Deerfield Beach. Another testified that while she was buying gasoline two men of color took her purse from the passenger seat. And the car they drove was the same color as defendant’s. The third witness testified that a black man took her purse as she was walking into her apartment complex. She said that after a “bit of a struggle” he hit her in the head with a barrel of a gun in order to get her purse. A police officer testified that property belonging to all three of these women was found, pursuant to a search warrant, in defendant’s apartment.
Defendant points out that neither defendant nor any of these witnesses identified their perpetrators. Their only common characteristic is that each crime involved a purse snatching by a man of color. Defendant argues that this single feature — offenders of the same race — is not a “unique feature” satisfying the essential requirement for other crimes evidence, that a common race may have been involved hardly comes close to showing that the same person committed all the crimes. Indeed, he contends, there are more dissimilarities than similarities. We agree.
Evidence of similar acts or crimes is not admissible to show bad character or a mere propensity to commit the crime on trial, and its relevancy must be carefully and cautiously, scrutinized before it is deemed admissible. Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Similar fact evidence that defendant committed a collateral crime is inherently prejudicial because it creates the risk that a conviction will be based on the defendant’s bad character or propensity to commit crimes, rather than on proof that he committed the charged offense. Heuring v. State, 513 So.2d 122, 124 (Fla.1987). As the Florida Supreme Court explained in Heuring:
To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but *730 they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses, [e.s.]
513 So.2d at 124.
In cases where the purported relevancy of the collateral crime evidence is the identity of the defendant, the Supreme Court has required “identifiable points of similarity” between the collateral act and charged crime having “some special character or [are] so unusual as to point to the defendant.” McLean v. State, 934 So.2d 1248, 1255 (Fla.2006); Drake v. State, 400 So.2d 1217, 1219 (Fla.1981). Owing to the inherently prejudicial nature of such evidence, the State should not be allowed to make the collateral crime a feature instead of an incident. Steverson v. State, 695 So.2d 687, 689 (Fla.1997) (quoting Randolph v. State, 463 So.2d 186, 189 (Fla.1984)). Here it became a feature.
In this case the evidence of the other purse snatchings does not satisfy these requirements. At best it showed only a general similarity to the one on trial. By its very nature purse snatching requires a vulnerable victim in a public place, preferably in circumstances in which her attention and grasp may be momentarily lessened. Parking lots are a common scene for these incidents simply because they provide the most favorable setting for an attempt. Hence the other crimes evidence in this case strongly suggests little more than propensity and bad character. There is nothing in the testimony of the three witnesses suffering the snatchings that makes their takings strikingly similar or that shares some unique characteristic that sets them apart from other offenses. The evidence should not have been admitted.
Nor has the State been able to overcome the inherently damaging nature of this evidence and establish beyond any reasonable doubt that it had no prejudicial effect on the jury’s consideration. See Goodwin v. State, 751 So.2d 537 (Fla.1999) (if erroneous judicial ruling is to be found harmless, court must first evaluate impact of error in light of overall strength of state’s case and defenses asserted and then conclude beyond reasonable doubt that verdict could not have been affected by erroneous ruling); Heuss v. State, 687 So.2d 823 (Fla.1996) (same); State v. DiGuilio, 491 So.2d 1129 (Fla.1986) (same); see also Czubak v. State, 570 So.2d 925, 928 (Fla.1990) (erroneous admission of collateral crimes evidence is presumptively harmful); Castro v. State, 547 So.2d 111, 116 (Fla.1989) (same).
Finally, we also reject the State’s contention that the testimony regarding the firearm was admissible as a spontaneous utterance. The victim made the statement to one of the investigating officers at the scene. At trial she could not remember seeing the gun. The officer testified that he did not question her when he first arrived on the scene because she was too upset. He waited until she had calmed down and was better able to answer his queries.
In Mariano v. State, 933 So.2d 111 (Fla. 4th DCA 2006), regarding an identical issue under nearly identical circumstances, Judge Warner explained:
[It] is the state’s burden to show that the statement is an excited utterance. The state does not do this merely by showing that the statement was made close to the startling event and the de-clarant was upset. The deputy testified that the statements made by Schaab were prompted by his questioning. On this record, the court abused its discretion in admitting Brochu’s testimony regarding Schaab’s statement.
933 So.2d at 118. In this case the circumstances of the victim’s statement to the *731 investigating officer are hardly distinguishable from those in Mariano. It was clear error to allow the testimony.

Reversed for new trial.

STONE and WARNER, JJ., concur.