660 So.2d 668 (1995)
Ramon SAFFOR, Petitioner,
v.
STATE of Florida, Respondent.
No. 82531.
Supreme Court of Florida.
July 13, 1995.
Rehearing Denied September 20, 1995.
*669 Nancy A. Daniels, Public Defender, and Glen P. Gifford and David P. Gauldin, Asst. Public Defenders, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen., James W. Rogers, Bureau Chief, Criminal Appeals, and Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for respondent.
GRIMES, Chief Justice.
We review Saffor v. State, 625 So.2d 31 (Fla. 1st DCA 1993) (en banc), in which the district court of appeal certified the following question of great public importance:
WHAT IS THE CORRECT STANDARD TO BE UTILIZED IN DETERMINING THE ADMISSIBILITY OF COLLATERAL CRIMES EVIDENCE IN CASES INVOLVING SEXUAL BATTERY WITHIN THE FAMILIAL CONTEXT?
Id. at 36. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Saffor was convicted of sexual battery on a child under twelve years of age. The testimony presented at Saffor's trial revealed that ten-year-old Jason was the son of Saffor's girlfriend. Jason was living with his mother and Saffor at the time of the offense. Saffor had fathered two children with Jason's mother. On the night of the offense, Saffor and Jason were sleeping in the same bed. Jason asserts that Saffor woke him up, pulled down his pants, and sodomized him.
Collateral crime testimony by Saffor's niece was admitted over his objection regarding an incident that had occurred four years earlier when the niece was twelve years old. Saffor was convicted of attempted lewd assault for this incident. Defense counsel objected to the admission of the niece's testimony on the basis of the difference of the sex of the children, the disparity of the sexual acts involved, and the fact that Saffor failed to complete the attack against the niece. The trial court found the niece's testimony admissible. The niece testified at trial that the incident occurred one night when she was staying at her aunt's house. The niece was awakened when Saffor came into the bedroom where she was sleeping and put his hands under her pajamas towards her vagina. Saffor withdrew his hand when the niece asked him to leave.
On direct appeal, Saffor argued that the trial court erred by admitting the Williams rule[1] testimony regarding the attempted *670 lewd assault. He asserted that the collateral sex crime was not sufficiently similar to the charged offense to constitute similar-fact evidence under section 90.404(2). A majority of the en banc panel found that the charged offense and the collateral sex crime both involved sexual attacks on children approximately the same age who had a familial relationship with the perpetrator, and that both attacks occurred while the children were asleep in bed. The district court majority therefore concluded that the similarities between the methods of attack outweighed any dissimilarities and affirmed the trial court's decision to admit the niece's collateral crime testimony. However, the district court certified the question set forth above, noting that while Beasley v. State, 518 So.2d 917 (Fla. 1988), and Heuring v. State, 513 So.2d 122 (Fla. 1987), indicate that a different standard for the admissibility of collateral crime evidence may be used in familial context cases, this standard has never been specifically addressed.
We first address the issue of whether the sexual abuse in this case occurred in a familial context. The majority opinion noted that Jason's relationship with Saffor was tantamount to that of a stepson and held that there was sufficient evidence of a familial relationship to support admission of the collateral crimes evidence. Judge Ervin's concurring and dissenting opinion maintained that the record below failed to establish the existence of a familial type relationship.
In today's society, the parameters of the traditional family have become much less clearly defined. Many children live in situations involving broken homes, where multiple residences and step-parents or live-in partners are the norm. We most recently addressed the issue of what constitutes a familial relationship in State v. Rawls, 649 So.2d 1350 (Fla. 1994). In Rawls we held that:
[T]he determination of whether a familial relationship exists must be done on a case-by-case basis. Consanguinity and affinity are strong indicia of a familial relationship but are not necessary. Also, the defendant and the victim need not reside in the same home. The relationship must be one in which there is a recognizable bond of trust with the defendant, similar to the bond that develops between a child and her grandfather, uncle, or guardian.
Id. at 1353.
We find that there was a recognizable bond of trust between Jason and Saffor and hold that the relationship between them was familial. As is pointed out in Judge Miner's concurring opinion, the record in the instant case revealed that Jason and his mother had previously resided with Saffor during the time period when Jason's mother gave birth to Saffor's daughters (Jason's half-sisters). Saffor, 625 So.2d at 36 (Miner, J. concurring). We agree with Judge Miner that Saffor must have had continuing contact of a familial nature with Jason during his mother's previous residence with Saffor, and that absent a family-type relationship, Saffor would not have allowed Jason and his mother to move in when they showed up on Saffor's doorstep, uninvited, with no place to stay. Id. at 37 (Miner, J., concurring). The fact that Saffor and Jason slept in the same bed was a further indication of a familial relationship.
Having determined that the charged offense occurred within the familial context, we now address the certified question. Saffor argues that the niece's testimony was inadmissible under the Williams rule because the collateral crime was insufficiently similar to the charged offense and that such evidence only proves depraved sexual propensity. Section 90.404(2)(a), Florida Statutes (1993), which codifies the Williams rule, provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.
In Heuring v. State, 513 So.2d 122 (Fla. 1987), we expanded the Williams rule in cases involving sexual battery committed within the familial context. We recognized in Heuring that situations involving sexual *671 battery committed within the familial context present special problems:
The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eyewitness and corroborative evidence is usually scant. Credibility becomes the focal issue.
Id. at 124. We therefore determined that similar fact evidence arising out of the familial context is relevant to corroborate the victim's testimony and that the probative value of such evidence outweighed its prejudicial effect. Id. at 125. In essence, our holding in Heuring enlarged the list of instances where similar fact evidence is admissible (i.e., as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) to also include admission of similar fact evidence to corroborate a familial sexual battery victim's testimony.[2] We recently expanded this holding in Rawls to allow the admission of similar fact evidence to corroborate a child sexual abuse victim's testimony in nonfamilial sexual battery cases where identity of the perpetrator is not at issue. 649 So.2d at 1354.
We explained in Heuring that under the general rule regarding the admission of collateral crimes evidence, the collateral offense and the charged offense must be strikingly similar and must share some unique characteristic or combination of characteristics which sets them apart from other offenses in order to be admissible. At the same time, we discussed a relaxed standard of admissibility for familial sexual battery cases, but we did not specifically address the question of how similar the charged offense and the collateral sex crime must be in order for the collateral crime evidence to be admissible.
On one hand, it may be argued that this evidence must meet the stringent similarity requirements traditionally imposed by the Williams rule. Thus, only if the collateral sex crime and the charged offense are strikingly similar and share some unique characteristic or combination of characteristics which sets them apart from other offenses may the collateral sex crime evidence be admitted to corroborate a familial sexual battery victim's testimony. This is the position adopted in Judge Allen's dissenting opinion below.
On the other hand, there is a contrary argument that if the collateral sex crime and the charged offense are both committed in the familial context, then the collateral sex crime should be admissible to corroborate the victim's testimony, even if all other aspects of the crimes are dissimilar. This is the position adopted in Judge Ervin's concurring and dissenting opinion below. Judge Ervin opined that differences in gender, location, types of offenses, or time are "simply immaterial" when deciding the admissibility of familial collateral sex crime evidence. Saffor, 625 So.2d at 38 (Ervin, J., concurring and dissenting). He stated that our opinion in Heuring "implicitly recognized" that "a close family-type situation frequently makes a child more susceptible to the venal advances of a child molester and thereby furnishes to such person a greater opportunity for carrying out his deviant intent" and that "the important similarity between the charged and collateral crimes is that the child victim in each situation is placed in an extremely vulnerable position, which makes him or her far more susceptible to the dissolute influence of adult family-type members." Id. (Ervin, J., concurring and dissenting). The majority opinion went even further by suggesting that this Court determined in Heuring that collateral sex crime evidence was corroborative of a victim's testimony, and therefore admissible, because "the fact that the perpetrator has acted in a similarly depraved fashion in the past is predictive of his actions at other times." Saffor, 625 So.2d at 34.
Our position on this matter lies somewhere in between the stringent similarity requirement of the usual Williams rule case and the liberal similarity rule enunciated by Judge Ervin. Heuring and Beasley do not stand for the proposition that in a case involving the sexual abuse of a child in a familial context any evidence of the familial sexual abuse of another child is per se admissible. *672 See Feller v. State, 637 So.2d 911, 916 (Fla. 1994). Nor do these cases authorize the use of collateral sex crime evidence to corroborate a victim's testimony by showing that the collateral sex crime demonstrated a depraved sexual propensity on the part of the accused. We hold instead that when the collateral sex crime and the charged offense both occur in the familial context, this constitutes a significant similarity for purposes of the Williams rule, but that these facts, standing alone, are insufficient to authorize admission of the collateral sex crime evidence. There must be some additional showing of similarity in order for the collateral sex crime evidence to be admissible. The additional showing of similarity will vary depending on the facts of the case and must be determined on a case-by-case basis. Thus, we do not eliminate the requirement of similarity which undergirds the Williams rule. However, the strict similarity in the nature of the offenses and the circumstances surrounding their commission which would be required in cases occurring outside the familial context is relaxed by virtue of the evidence proving that both crimes were committed in the familial context.
Returning to the case at bar, we find that although the collateral sex crime and the charged offense were both committed within the familial context, the evidence of similarity fell short of even the relaxed standard adopted in this opinion. The offenses bore little resemblance to each other. Not only were there obvious differences in the children's ages and gender, but the acts also took place during different time frames, at different locations, and at different times of the day. The only real similarity was that both offenses were committed while the children were asleep in bed. By itself, this was not enough to meet the similarity requirement discussed above, especially in light of the numerous dissimilarities.
We therefore hold that the trial court erred when it admitted the niece's testimony as collateral sex crime evidence. Accordingly, we quash the decision below and remand the case for a new trial.
It is so ordered.
OVERTON, KOGAN and HARDING, JJ., concur.
ANSTEAD, J., concurs specially with an opinion.
SHAW, J., concurs in part and dissents in part with an opinion, in which WELLS, J., concurs.
ANSTEAD, Justice, specially concurring.
While I generally agree with the views expressed in the majority opinion, I would adopt the analysis expressed by Judge Allen in his separate opinion below. In particular, I concur with that portion of his opinion which squarely sets out the rationale for our holding in Heuring v. State, 513 So.2d 122 (Fla. 1987):
Where collateral crime evidence goes beyond merely showing that a defendant in a familial child sexual assault case has committed a sexual assault upon another child family member and additionally shows that the circumstances of the collateral crime share a unique characteristic or set of characteristics with the charged crime, the evidence serves to prove more than mere propensity. Such evidence bolsters the credibility of the child witness in the charged crime, not because the evidence simply shows the defendant's propensity to commit sexual assaults upon children, but because it is unlikely that the victim in the charged crime could have fabricated a version of events which shares unique characteristics with the collateral crime. I believe that such uniquely similar collateral crime evidence is the type of evidence the supreme court had in mind when it authorized the admission of similar fact collateral crime evidence to bolster the credibility of child victims of familial sexual assaults. Because the charged and collateral crimes in this case were not uniquely similar, the collateral crime evidence should not have been admitted.
Saffor v. State, 625 So.2d 31, 42 (Fla. 1st DCA 1993) (Allen, J., dissenting).
SHAW, Justice, concurring in part, dissenting in part.
I agree with the majority's statement of the law to the effect that:

*673 [W]hen the collateral sex crime and the charged offense both occur in the familial context, this constitutes a significant similarity for purposes of the Williams rule, but ... these facts, standing alone, are insufficient to authorize admission of the collateral sex crime evidence. There must be some additional showing of similarity in order for the collateral sex crime evidence to be admissible.
Maj. op. at 672. I am nonetheless unable to join fully in the majority opinion because I believe that this test was met in the present case. There was ample evidence of similarity, in my opinion, apart from the fact that both crimes arose in the familial context.
The present offense involves a ten-year-old boy, Jason, who was living with both Saffor and his own mother at the time of the crime. On the night of the offense, Saffor and Jason were sharing a bed. While Jason was sleeping, Saffor pulled down his own and the boy's pants, climbed on top of the boy, and sodomized him. The collateral offense involved a twelve-year-old girl, Danielle, Saffor's niece, who was spending the night at her aunt's house. While Danielle was asleep, Saffor entered her room, placed his hand under her pajamas and underpants, and began massaging her vaginal area. When Danielle told him to leave her alone and get out, he did. Saffor was convicted of attempted lewd assault for committing the collateral offense.
The collateral crime evidence was not introduced as a "fingerprint" to identify a particular defendant, out of innumerable possible defendants, as the perpetrator. Had such been the case, the stringent "strikingly similar" standard would be the proper criterion. See Heuring v. State, 513 So.2d 122 (Fla. 1987). Rather, the evidence was introduced only to support Jason's primary testimony. The logic is simple: If the collateral crime shared sufficient features with Jason's independent account of the present crime, the jury could reasonably consider the collateral crime as one more factor tending to show that ten-year-old Jason was not fabricating his account of what occurred.
A cursory review of the two crimes reveals numerous points of similarity beyond the fact that the defendant used his authority to sexually assault two minors within his family:
 Both crimes involve children who were distant "relatives" of Saffor, as opposed to members of his immediate family. Neither crime involves Saffor's own daughters. (Saffor may have felt he was avoiding society's taboo against incest.)
 Both crimes involve children who were similar in terms of chronological age (ages ten and twelve). Neither crime involves an extremely young child (e.g., aged three or four) or an older, teenaged child.
 Both crimes involve children who were similar in terms of biological development  both were prepubescent. Neither crime involves a child who had reached the age of sexual maturity. (Prepubescent children are often attractive to pedophiles because of their lack of adult sexual characteristics.)
 Both crimes took place in the home. Neither crime took place in a car or in the woods or some other private place. (Saffor apparently determined in each case that the home provided the most private place to make his assault.)
 Both crimes took place in the bed where the child was sleeping. Neither crime took place in the shower or swimming pool or some other location within the home. (Saffor apparently felt the child was most vulnerable and conditions most private in the child's bed.)
 Both crimes were initiated against a child who was asleep for the night. Neither crime was initiated against a napping child, or an alert, awake child. (Saffor apparently felt that the child was most vulnerable when awakened from deep sleep.)
 In both crimes, Saffor actively performed the illicit sexual act upon the child. Neither crime involves an attempt by Saffor to force the child to perform a sexual act upon Saffor, such as fondling or fellatio. Saffor assumed an active, as opposed to passive, role in each case.
 Both crimes involve contact only with the anal-genital region of the child. Saffor did not attempt to kiss either child or to touch Danielle's breasts or Jason's penis. *674 Saffor was attracted only to the child's lower bodily orifices.
In short, the record shows that Saffor used his authority to sexually assault two prepubescent children within his family in a similar fashion when the opportunity arose. Given the degree of similarity between the crimes, I agree with the district court sitting en banc that the trial court acted properly in allowing the jury to consider the collateral crime evidence.
This evidence is particularly important in light of defense counsel's attacks on ten-year-old Jason's credibility. Defense counsel argued in closing:
So it's extra hard when you come in here and you're dealing with a kid with a mental age of 7 because you don't know what he's going to say... .
....
I can't tell you what goes on in that kid's mind and I don't think any psychologist can sit down with him for an hour and tell you what is going on in his mind. I mean, is this something that he could have fabricated? Is it something that his mother could have suggested to him? ...
....
... And I think that you [the jury] know, given when all this was reported and when people talked to him, there is a considerable period of time there for fabricating, imagining, dreaming, whatever, any kind of story he wants to, whether his mother gave him the idea or whether he got it himself.
In my opinion, the probative value of the collateral evidence far outweighs any prejudice. To deprive ten-year-old Jason of this reasonable opportunity to corroborate his story is not called for under the applicable law and flies in the face of society's search for the truth. I would approve the district court decision rather than giving Saffor a whole new trial.
WELLS, J., concurs.
NOTES
[1] § 90.404(2), Fla. Stat. (1989); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] We note that the list of instances in section 90.404(2) is non-inclusive and is not statutorily limited to the instances specifically enumerated therein.