SHAHOOD, J.
Appellant, Richard I. Smith, appeals his conviction and sentence on two counts of committing a lewd, lascivious, or indecent act upon a child under the age of sixteen years. He alleges that the trial court erred in admitting collateral bad act evidence of prior sexual misconduct with his natural daughters several years prior to the incidents for which he was convicted, arguing that the incidents were too dissimilar to have been admitted for the purpose of corroborating the victim’s testimony. Finding merit in appellant’s position, we reverse and remand for a new trial.
Prior to trial, appellee, State of Florida, filed a notice of intent to rely on collateral bad act evidence under section 90.404(2)(b), Florida Statutes. The state alleged that on or about January 1, 1975 through December 31, 1986, defendant sexually assaulted his two minor daughters. Appellant moved to exclude the evidence claiming that such evidence was not relevant and would be prejudicial. At a pre-trial hearing, appellant moved in li-mine to exclude the Williams Rule evidence.[1] He argued that the alleged incidents concerning his daughters over twenty-five years ago were dissimilar to the allegations raised by the victim in this case. The court denied the motion to exclude the daughters’ testimony finding that the conduct once alleged by the daughters and the victim arose in a familial setting thereby rending the Williams Rule evidence admissible.
The victim, was sixteen at the time of the trial, however, the alleged incident occurred when she was eight years old and in the third grade. At the time of the alleged incident, the victim lived with her mother and next door to her maternal grandmother and her grandmother’s boyfriend, Richard Smith. The victim first became acquainted with appellant when she was four or five years of age and spent several weekends and holidays with her *281 grandmother and appellant, whom the victim viewed as a grandfather figure.
The victim’s grandmother often used to babysit for the victim at the house she shared with appellant when the victim’s mother was working. However, there were times when her grandmother was not at home and she was left alone with appellant. After the third grade, the victim convinced her mother to let her stay at home by herself.
The victim alleged that sometime between 1992 and 1993, appellant touched her in a “bad way.” The victim claimed that appellant would place his hand underneath her pants and rub her vagina while the two were in his bedroom. She claimed that this took place during the day on at least ten occasions when her grandmother was not around and when the two were on a fishing trip. According to the victim, appellant allegedly told the victim not to tell anyone or he would be mad at her.
Prior to the testimony of appellant’s daughters, the court gave a limiting instruction which stated that the testimony could be considered only for purposes of relating to proof of corroborating the victim’s testimony.
S.M., appellant’s daughter, testified that when she was six, appellant touched her in a bad way. She explained that on one occasion, she, her sister, and her father, played strip poker and when her sister was out of the room, her father rubbed her vagina with his penis, perhaps penetrating her. On another occasion, when she was fifteen, appellant watched his daughter and a friend take a shower, suggesting that they touch each other and later awoke to find appellant on top of her while she was clothed, simulating sex.
Appellant’s older daughter, L.B., testified that when she was in the second grade, appellant touched her inappropriately. She stated that her father would fondle her at night in her bedroom and that they had engaged in mutual fondling which progressed to sexual intercourse. Appellant told his daughter not to tell anyone or he would hurt her or her mother.
The jury ultimately found appellant guilty as charged in the information.
In denying appellant’s motion in limine to exclude his daughters’ testimony, the court held that the conduct once alleged by the daughters and by the victim arose in a familial setting thereby rending the Williams Rule evidence admissible.
On appeal, appellant argues that the collateral sex crime evidence was inadmissible in that it did not meet the requirements necessary under Saffor v. State, 660 So.2d 668 (Fla.1995). The state claims that such evidence was highly relevant to corroborate the victim’s testimony.[2]
Section 90.404(2), Florida Statutes (1999), provides that collateral crime evidence may be admitted when relevant to prove a material fact in issue such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when relevant solely to prove propensity.
In Heuring v. State, 513 So.2d 122, 124 (Fla.1987), the Florida Supreme Court expanded the Williams Rule in cases involving sexual battery committed within the familial context. It determined that similar fact evidence arising out of the familial context is relevant to corroborate the victim’s testimony and that the probative value of such evidence outweighed its prejudi *282 cial effect. See id. at 125; Saffor, 660 So.2d at 671.
In Sajfor, the Florida Supreme Court recognized that the parameters of the traditional family are much less defined today and discussed what constituted a familial relationship:
[T]he determination of whether a familial relationship exists must be done on a case-by-case basis. Consanguinity and affinity are strong indicia of a familial relationship but are not necessary. Also, the defendant and the victim need not reside in the same home. The relationship must be one in which there is a recognizable bond of trust with the defendant, similar to the bond that develops between a child and her grandfather, uncle, or guardian.
Id. at 670 (quoting State v. Rawls, 649 So.2d 1350 (Fla.1994)).
The Sajfor court adopted a relaxed two-prong test for the admission of collateral crime evidence in sexual abuse cases within the familial context. First, both the charged offense and the collateral offense must occur within the family setting. Second, there must be some additional showing of similarity between the incidents in order for the collateral crime evidence to be admissible. See Saffor, 660 So.2d at 672; Thompson v. State, 743 So.2d 607, 608 (Fla. 4th DCA), cause dismissed, No. 99-18, — So.2d-(Fla. Dec. 20, 1999). The additional showing of similarity' will vary depending on the facts of the case and must be determined on a case-by-case basis. See Saffor, 660 So.2d at 672.
In Sajfor, the supreme court held that the similarities between the charged offense of sexual battery of the defendant’s girlfriend’s ten-year old son and the collateral offense of attempted lewd assault of the defendant’s twelve-year old niece were not sufficient to render the collateral offense admissible. Although the offenses took place in a familial context, there were differences in the children’s ages and gender, and the acts took place during different times of the day. See id. The court held that the only real similarity was that both offenses were committed while the children were asleep in bed. See id.
In Thompson v. State, 743 So.2d 607 (Fla. 4th DCA 1999), this court upheld a defendant’s conviction for sexual battery on a child and sexual battery while standing in the position of a parent or custodian. The defendant’s victim was his young daughter with whom he engaged in both oral and vaginal sex. The collateral crime evidence consisted of appellant’s sexual abuse of defendant’s step-daughter while she was between the ages of six and eleven in which he pled guilty to lewd and lascivious assault.
This court held that both the victim and the collateral victim were in a father-daughter relationship with the defendant and the defendant approached both victims regarding sex in a way that seemed as though he was teaching them. The incidents occurred in the victims’ homes, the defendant threatened both victims by telling them that their mother would hate them if they told her and the conduct began with kissing and fondling and escalated to oral sex. Although the defendant claimed that the two cases were dissimilar because the sexual abuse with the collateral victim did not include oral or vaginal sex, the evidence showed that the collateral victim refused to acquiesce to oral sex and reported the incident which resulted in his first conviction and imprisonment. See id. at 608.
In this case, it is undisputed that the alleged incident with the victim arose in a familial setting where appellant acted as a de facto grandfather to the victim and the collateral crime witnesses were appel *283 lant’s natural daughters. However, the similarities between the charged offense and the collateral offenses were sufficiently dissimilar to render the collateral crime evidence inadmissible.
Although we must reverse for a new trial, we nevertheless address appellant’s sentencing issue, should this matter arise again.
Appellant raises as his second issue on appeal, error by the trial court in orally imposing an upward departure sentence based on the grounds that the victim was a small child when victimized and that the victim had been so traumatized that she had psychological problems and continued to display some physical problems that could be related to the crimes charged against appellant. As written reasons for departure, the court stated that (1) victim has suffered emotionally from defendant’s actions; and (2) victim especially vulnerable due to her age and the fact that the defendant was in custodial authority over the victim.
Appellee concedes that vulnerability due to age and appellant’s custodial authority over the victim was an invalid reason for departure. In Capers v. State, 678 So.2d 330, 332 (Fla.1996), the Florida Supreme Court affirmed the First District’s decision holding that the vulnerability of the victim due to age as grounds for departure did not apply to offenses committed prior to January 1, 1994, the effective date of the new 1994 sentencing guidelines. In this case, appellant was charged with committing the offense between 1992 and 1993.
As to the second ground, emotional or psychological trauma to a victim may constitute a valid reason for a departure sentence when the victim’s trauma results from extraordinary circumstances clearly not inherent in the crime charged or when the victim has a discernible physical manifestation resulting from trauma. See State v. Rousseau, 509 So.2d 281, 284 (Fla. 1987). In this case, the record does not support a finding that the victim had a discernible physical manifestation resulting from trauma. Accordingly, the trial court’s bases for departure were invalid.
REVERSED AND REMANDED FOR NEW TRIAL.
POLEN and FARMER, JJ., concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).

. Although appellant failed to preserve his objection as to S.M.’s testimony, he adequately preserved his objection as to L.B.'s testimony.