811 So.2d 714 (2002)
Marvin MORMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-2948.
District Court of Appeal of Florida, Second District.
February 20, 2002.
Rehearing Denied April 5, 2002.
*715 James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Danilo Cruz Carino, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Marvin Morman appeals his convictions for four counts of lewd and lascivious act on a child[1] and his sentences of twenty years for each count to be served concurrently. He argues that the trial court erred by permitting the introduction of similar fact testimony,[2] by imposing multiple convictions in violation of the prohibition against double jeopardy,[3] and by improperly scoring victim injury points without such fact being found by the jury. We affirm in part and reverse in part.
The amended information charged Mr. Morman with the improper handling or fondling of K.T.J., a female under the age of sixteen years. These criminal acts allegedly took place on Friday, April 30, and Saturday, May 1, 1999. Specifically, the amended information charged that Mr. Morman committed two of the crimes, touching of the genital and/or buttock area and touching of the breast area, on April 30, and touching of the breast area and the genital area again the following day.
In her testimony, K.T.J. described two episodes when Mr. Morman, a distant cousin of hers, improperly touched her while they both were visiting overnight in the home of K.T.J.'s uncle. The first took place while she was lying on a couch on Friday evening. That evening, Mr. Morman sat next to her and while moving his hands up and down over her person, touched her "butt" under her hips, and felt and squeezed her breasts. She ended the episode by walking away. These acts were apparently the basis for the first two counts of the information. The second episode she described took place the following day in the bathroom. K.T.J. testified that during this episode Mr. Morman sat her on the counter and, while holding her there, rubbed his body up and down against her. Although both were clothed, she felt his hard penis touch her vaginal area while he also squeezed her chest. After about ten minutes the episode ended. These acts were the basis for the third and fourth counts.
*716 The similar fact witness, Ms. Latonya Polite, was twenty-one years old at the time she testified at Mr. Morman's trial. She testified that when she was nine years old, Mr. Morman, her mother's live-in boy-friend at the time, fondled her vaginal area several days a week during a period of several months. Mr. Morman would, while sitting on a bed, pull her to him and, while rubbing his erect penis against her vaginal area, also rub her bottom. On other occasions, she would awaken to find him pressing against her while squeezing her buttocks. He also would fondle her while in the bathroom. These incidents often lasted about ten minutes.[4] Mr. Morman objected to admitting the similar fact evidence, contending that the evidence did not meet the standard of relevance for admission and that the alleged acts against K.T.J. did not occur in a familial context. The trial court overruled his objections.

Double Jeopardy
K.T.J.'s testimony clearly established two separate episodes of criminal conduct, one on Friday evening and the other the following day. Mr. Morman challenges whether these two episodes can be further divided into multiple offenses based upon his fondling of different areas of the body during each episode. He argues that such subdividing of an episode into multiple lewd and lascivious offenses offends the guarantee against double jeopardy. Section 800.04(1), Florida Statutes (1997), the version of the statute under which he was prosecuted, states that a person who handles, fondles, or assaults any child under the age of sixteen years in a lewd, lascivious, or indecent manner commits a felony. We must determine, under these facts, the appropriate "unit of prosecution" in this context. Sanabria v. United States, 437 U.S. 54, 66, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).
Recently, a similar issue arose in Eaddy v. State, 789 So.2d 1093 (Fla. 4th DCA 2001), where the court was required to determine whether the unlawful touching of a victim's breasts and the fondling of her vagina in a single episode could sustain two convictions for a lewd assault. In concluding that only one conviction was proper, the court focused upon the "spatial and temporal aspects of the multiple occurrences." Id. at 1095. Because the events took place within one episode without a break in time for the defendant to form a second criminal intent, the court concluded only one crime had transpired.
A similar contention challenging multiple acts of sexual battery was addressed in Saavedra v. State, 576 So.2d 953 (Fla. 1st DCA 1991), approved, 622 So.2d 952 (Fla. 1993). In trial in Saavedra, the State argued that each sexual battery occurred at a different location and time[5] and that in between each, the defendant had time to pause and reflect before again sexually battering the victim. Based on such facts, the State concluded, three separate offenses had occurred and, thus, double jeopardy principles were not violated. The First District agreed and held that although the criminal acts complained of were of the same type and character, they were sufficiently separated by time and *717 location so that double jeopardy was not involved. Id. at 956.
Some further guidance can be obtained from the Florida Supreme Court's opinion in State v. Hightower, 509 So.2d 1078 (Fla.1987). "As now worded, section 800.04 contemplates that if sexual activity takes place with a person under sixteen years of age which does not constitute the crime of sexual battery, the conduct is deemed to be lewd and lascivious." Id. at 1079. Thus, we conclude that the statute's focus is on conduct involving sexual activity and not upon the individual acts that comprise lewd and lascivious activity in the same spatial and temporal zone.[6] Here, there were two episodes of inappropriate sexual activity for which Mr. Moorman may be punished, the conduct occurring on Friday evening on the couch, and the conduct occurring on Saturday in the bathroom. Within each day's episode there was practically simultaneous touching of two proscribed areas (breast and buttocks areas on Friday, and breast and genital areas on Saturday). Thus, the various lewd and lascivious acts were not sufficiently discrete for them to be deemed separate offenses within each episode. Upon remand, the court must strike two convictions as violating double jeopardy.

Similar Fact Evidence
In admitting the testimony of the similar fact witness, Ms. Polite, the trial court found a familial context or relationship between Mr. Morman and K.T.J. and, therefore, used the relaxed standard of Heuring v. State, 513 So.2d 122 (Fla.1987). The existence of a familial relationship depends on the particular facts of a case. State v. Rawls, 649 So.2d 1350, 1352 (Fla. 1994). No single definition of the term suffices. The trial court must consider consanguinity and affinity, the existence of a recognizable bond of trust between the child and the adult, and the adult's ability to exercise custodial authority over the child. Id. at 1353.
Here, although there is a remote degree of familial consanguinity, we find it too remote to be of any moment. Furthermore, Mr. Moorman was not exercising custodial authority over K.T.J., nor did the record evidence demonstrate a recognizable bond of trust between the two. In fact they had met for the first time earlier that week. Therefore, it was error to conclude that a familial relationship existed and to admit, on that basis, similar fact evidence as permitted by Heuring.[7]
Using the nonfamilial context standard for admitting similar fact evidence, we must still determine whether Ms. Polite's evidence was nevertheless admissible. Traditionally, as the supreme court in Heuring noted, the similar fact evidence must meet a strict standard of relevance; the charged and collateral offenses must be "not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses." Heuring, 513 So.2d at 124. Generally, section 90.404(2)(a), Florida Statutes (1997), requires that the evidence must be "relevant to a material fact such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident." Farrill v. State, 759 So.2d 696, 699 (Fla. 2d DCA 2000). Identity is not an *718 issue in Mr. Morman's case, so our analysis must focus on the other valid purposes of the similar fact evidence. The alleged acts of abuse, the surrounding events, the factors affecting reliability, the gender and ages of the victims, the location of the assaults, the duration of the defendant's acts, and the manner of the assaults lead us to conclude that the trial court did not abuse its discretion in admitting the similar fact evidence. Jones v. State, 728 So.2d 788 (Fla. 1st DCA 1999).

Sentencing Issue
The calculations of Mr. Morman's scoresheet are based on convictions for four counts of second-degree felonies. Because we have found a double jeopardy violation, necessitating the striking of the convictions on two of these counts, the extra points for the two improper counts also illegally enlarge the point totals in the "additional offenses at conviction" and "victim injury" sections of the scoresheet. The trial court had sentenced Mr. Morman to the lowest possible sentence that his scoresheet produced, twenty years, concurrent, on each count. Because this twenty-year sentence was above the statutory maximum of fifteen years for the second-degree felonies, Mr. Morman's appellate counsel has raised an Apprendi[8] challenge to the inclusion of the victim injury points. Our rough recalculation of the point total for only two counts produces a lowest permissible sentence of approximately eleven and a half years. Should the trial court on remand again choose to impose the lowest permissible sentence, this Apprendi issue will be mooted. Therefore, we decline to address it at this time.
Affirmed in part; reversed in part; and remanded for resentencing with a scoresheet recalculated in accordance with this opinion.
FULMER and CASANUEVA, JJ., Concur.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I fully concur in the court's opinion. I write only to suggest that the familial/ nonfamilial dichotomy established in Heuring v. State, 513 So.2d 122 (Fla.1987), may warrant reexamination. In Heuring, the court held that Williams[9] rule evidence in cases involving alleged sexual misconduct must meet a strict standard of relevance in nonfamilial cases, and a lower standard of relevance in familial cases. 513 So.2d at 124. Thus, when the sexual battery occurs outside the family context, any prior sexual misconduct by the defendant can be admitted only if it is not only strikingly similar, but if it shares some unique characteristic or combination of characteristics which sets the offenses apart. This level of uniqueness is often compared to fingerprint evidence.
In setting a reduced standard for use in familial cases, the supreme court explained in Heuring that "[t]he victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue." 513 So.2d at 124.
It seems to me that the explanation in Heuring was more accurate than the resulting dichotomy. When identity is the issue that makes the Williams rule evidence probative, it stands to reason that *719 the evidence proving identity should be analogous to fingerprint evidence. In such a case, there is grave risk that Williams rule evidence lacking unique characteristics will be more prejudicial than probative. Thus, in any context, familial or otherwise, if the evidence is introduced to prove identity, it should meet the heightened standard.
When the identity of the alleged perpetrator is not an issue, then the Williams rule evidence is obviously not relevant to that element of the offense. In such cases, it is typically introduced to support the credibility of the victim. If such evidence is admissible under a relaxed standard in the family context when identity is not an issue, I am inclined to believe that it should be admissible under that same standard in most nonfamilial cases because its probative value and prejudicial effect is not significantly affected by the family context.
In the final analysis, in all of these cases we are making case-specific determinations of whether the probative value of this evidence as it pertains to a particular issue outweighs its inherent prejudicial effect. Cf. Saffor v. State, 660 So.2d 668 (Fla.1995) (holding that similar fact evidence was not admissible even under relaxed Heuring standard where there were not other significant similarities between charged crime and evidence). Perhaps the factor of a family context plays some small role in this calculus that is independent of the factor of identity, but if that is so, then its role in this complex equation seems very slight.
As this case demonstrates, sexual offenses often tend to arise in nontraditional family settings. In these cases, judges are now spending most of their time trying to divine the elusive definition of "family," which distracts them from the real task of assessing the issue-specific probative value of inherently prejudicial evidence.
NOTES
[1] § 800.04(1), Fla. Stat. (1997). A violation of this statute is a second-degree felony.
[2] § 90.404(2), Fla. Stat. (1997).
[3] U.S. Const. amend. V; Art. I, § 9, Fla. Const.
[4] Mr. Morman admitted, at the time of the alleged incidents with Ms. Polite as well as during the instant proceedings, that he committed the acts against Ms. Polite.
[5] The prosecuting witness had testified that over a period of an hour and fifteen minutes three vaginal penetrations had occurred. The first took place in the shrubbery at the rear of her house after the defendant had forcibly removed her from her home. The defendant then took her to a slide in a park located behind her home where he again vaginally penetrated her. The third took place on a concrete area in the middle of the park. Saavedra v. State, 576 So.2d 953, 956 (Fla. 1st DCA 1991), approved, 622 So.2d 952 (Fla. 1993).
[6] We note that the statute was substantially rewritten effective October 1, 1999. Ch. 99-201, §§ 6, 17, at 1187-89, 1211, Laws of Fla.
[7] The trial court's misapprehension may have been occasioned by the facts of the relationship between Ms. Polite and Mr. Morman, because the circumstances of the situation between them when she was nine years old was more a familial or custodial context than the one in which Mr. Morman found himself with K.T.J.
[8] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that any factor, not including prior convictions, that raises a sentence above the statutory maximum must be found proven beyond a reasonable doubt by the finder of fact).
[9] Williams v. State, 110 So.2d 654 (Fla.1959).