854 So.2d 796 (2003)
Ronald McLEAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-1322.
District Court of Appeal of Florida, Second District.
September 5, 2003.
*797 James Marion Moorman, Public Defender, and James C. Banks, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Chief Judge.
Ronald McLean appeals his judgment and sentence for lewd molestation. We affirm, holding that section 90.404(2)(b), Florida Statutes (2001), which expands the use of Williams[1] rule evidence in child molestation cases, does not violate due process, at least in cases where the identity of the accused perpetrator is not an issue. We also hold that the trial court's reliance upon this rule of evidence did not *798 result in an ex post facto application of a statute and that the trial court did not abuse its discretion in admitting certain Williams rule evidence pursuant to this statute. Finally, we certify a question concerning the constitutionality of this new statute to the Supreme Court of Florida.

I. A STATEMENT OF THE CASE
Mr. McLean was charged with capital sexual battery[2] and lewd molestation[3] for events occurring on October 19, 2000. On that evening, Mr. McLean was visiting his brother, Gerald McLean. Gerald McLean's grandson, J.N., was also visiting that night. J.N. was eight years old at the time and lived near his grandparents. J.N. and his grandfather regularly watched wrestling on television on Thursday nights and J.N. would stay over at his grandparents' home. On October 19, J.N.'s grandmother put him to bed around 9 p.m. Shortly thereafter, both grandparents went to bed.
At approximately 11 p.m., J.N. awoke his grandmother and announced that he wanted to go home. He was fully dressed and had his knapsack packed. He seemed nervous, but he did not say anything to his grandmother. She drove J.N. home about 11:15 p.m.
J.N.'s mother worked an early morning shift. When she returned from work in the early afternoon, she asked him why he had decided to come home the previous night. She was not permitted to provide hearsay testimony concerning this conversation but explained that the conversation caused her to report the matter to law enforcement.
On the Monday following these events, Amy Wilkins, a case coordinator for the Children's Home Society, interviewed J.N. She had prior training and experience in interviewing children who report sexual abuse. J.N. told her that he woke up during the night at his grandparents' house. His "Uncle Ron" was rubbing J.N.'s bottom. J.N. explained that Mr. McLean inserted his finger into J.N.'s bottom, but he did not specify that Mr. McLean inserted his finger into J.N.'s anus. J.N. claimed that his uncle told him not to report this incident to anyone. A medical examination performed at the time of this investigation did not reveal any physical evidence of sexual abuse.
J.N. was nine years old at the time of trial. After a lengthy examination to determine his competency, the trial court allowed J.N. to testify. His testimony was consistent with the information he had previously provided to Ms. Wilkins.
Mr. McLean made no incriminating statements, and he did not testify at trial. Thus, the statements made by J.N. at the time of the alleged incident and his testimony at trial were the primary evidence against Mr. McLean.
To strengthen the testimony from J.N., the State sought to introduce Williams rule evidence from a Mr. Chambers. At the time of the pretrial Williams rule hearing, Mr. Chambers was twenty-seven years old and lived out of state. He testified that, when he was younger, Mr. McLean had repeatedly molested him.
When he was a child and lived in Pennsylvania, Mr. McLean worked with Mr. Chambers' father in a factory. Mr. McLean often spent time with the Chambers' family. In 1986, when Mr. Chambers was twelve years old, Mr. McLean went on a hunting trip with Mr. Chambers and his father. On the first night of this trip, Mr. Chambers awoke to find Mr. McLean pressing his penis against Mr. Chambers' *799 back and touching him under his underwear. Mr. McLean also touched Mr. Chambers' penis. Mr. McLean had been drinking prior to this event. Mr. Chambers pushed him away and went back to sleep. Later that same night, Mr. McLean returned and continued this conduct until Mr. Chambers ejaculated.
Mr. Chambers testified that several months later similar conduct occurred at his family's "mini-farm." Again, this conduct occurred after Mr. McLean had been drinking. On this occasion, Mr. McLean attempted to penetrate Mr. Chambers' anus with his penis. Mr. Chambers did not recall Mr. McLean fondling his bottom. Within a few months, similar conduct occurred when Mr. Chambers was at Mr. McLean's house.
Finally, on two more occasions, Mr. McLean assaulted Mr. Chambers while he was sleeping in a bedroom in Mr. Chambers' home. On one of these occasions, Mr. Chambers believed that Mr. McLean's penis penetrated his anus. On both of these occasions, Mr. McLean was a guest staying overnight in the home. By the final occurrence, Mr. Chambers was fourteen years old.
Mr. Chambers ultimately reported this conduct to his mother. He testified that his mother and father confronted Mr. McLean, who confessed to these crimes. They agreed not to report the matter to the police so long as Mr. McLean sought help from their church's minister. Mr. Chambers did not see Mr. McLean again until he testified at this trial, did not know the victim in this case, and had never met the victim's family prior to this trial.
Following this testimony, the trial court considered argument by counsel, as well as its own extensive, independent research. The lawyers relied upon the existing Williams rule case law, as well as section 90.404(2)(b), a new statute addressing Williams rule evidence in child molestation cases. The trial court concluded that in enacting section 90.404(2)(b), the legislature was attempting to overrule or modify the supreme court's rulings in Saffor v. State, 660 So.2d 668 (Fla.1995), and Heuring v. State, 513 So.2d 122 (Fla.1987). It also concluded that the legislature intended section 90.403, Florida Statutes (2001), to affect the admissibility of evidence under section 90.404(2)(b), so that a trial court must evaluate Williams rule evidence to determine whether its probative value outweighs its prejudicial effect. The trial court expressed its concern that the Williams rule evidence could cause the jury to convict Mr. McLean for the earlier alleged offenses if it had doubt about the charged offense. The discussion among the two lawyers and the trial judge is a model of professionalism; each lawyer advocating a position while assisting the court in its effort to reach a correct decision.
Ultimately, the trial court decided that section 90.404(2)(b) applied in this case and that the statute was constitutional. The trial court determined, however, that pursuant to section 90.403 it would be overly prejudicial to admit all of Mr. Chambers' testimony. The trial court concluded that the hearsay evidence of Mr. McLean's confession to Mr. Chambers' parents and evidence of all events occurring in locations other than Mr. Chambers' home should be excluded. Following the ruling, the trial court stated: "I'm sure we will find out later what this all means."
As a result of this ruling, the jury heard the evidence relating to the two incidents occurring in Mr. Chambers' home, but it did not hear evidence concerning Mr. McLean's confession, the events at the camp-out, the mini-farm, or at Mr. McLean's house. Prior to this testimony, the trial court gave the standard limiting and cautionary *800 instruction regarding Williams rule evidence. See Fla. Std. Jury Instr. (Crim.) 2.4. This instruction was repeated as a portion of the final charge. See Fla. Std. Jury Instr. (Crim.) 3.8(a). A full review of the transcript establishes that the State did not make this evidence a central feature of this trial during either the evidentiary portion of the trial or closing argument.
The jury convicted Mr. McLean of both attempted capital sexual battery and lewd molestation. Ultimately, the trial court denied a motion for new trial. It entered judgment only on the charge of lewd molestation.[4] Mr. McLean was sentenced to thirty years' imprisonment and designated a sexual predator.

II. THE NINE-YEAR-OLD VICTIM'S COMPETENCY TO TESTIFY
On appeal, Mr. McLean first argues that the trial court erred in determining that J.N. was competent to testify. Both of the lawyers and the trial judge asked many questions of J.N. during the competency determination. The trial court made findings at the conclusion of this presentation, and Mr. McLean's counsel did not request more specific findings. We conclude that the trial court complied with the requirements of Lloyd v. State, 524 So.2d 396 (Fla.1988), and Fuller v. State, 669 So.2d 273 (Fla. 2d DCA 1996). Its decision does not constitute an abuse of discretion. See Palazzolo v. State, 754 So.2d 731, 738 (Fla. 2d DCA 2000). It is noteworthy that the transcript of J.N.'s testimony following this determination of competency does not demonstrate any weakness, confusion, or circumstance that would suggest the trial court erred in deciding the issue of competency.

III. CHALLENGES TO SECTION 90.404(2)
Mr. McLean next argues that section 90.404(2)(b) is unconstitutional as a violation of due process. He further argues that application of the rule in his case violates the prohibition against applying laws ex post facto. Finally, he argues that the trial court erred in applying this statute even if it is constitutional. Section 90.404(2)(b) is a relatively new rule of evidence. See ch.2001-221, § 1 at 1938, Laws of Fla. This court has not previously addressed its validity or application. We conclude that the statute is constitutional, at least in a case not involving an issue of identity, and that it was properly applied in this case.
Section 90.404(2)(b)1 states:
In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
Before the enactment of this statute in July 2001, the admissibility of prior sexual misconduct by a defendant was controlled by a long, and arguably varied, line of cases stemming from the supreme court's decisions in Saffor, 660 So.2d 668; State v. Rawls, 649 So.2d 1350 (Fla.1994); Heuring, 513 So.2d 122; and Williams, 110 So.2d 654. In order for such prior misconduct to be admissible, the evidence needed to meet a "strict standard" of relevance that required "strikingly similar" misconduct *801 sharing some "unique characteristic." Heuring, 513 So.2d at 124. When both the charged offense and the prior misconduct occurred within a family setting, the family setting was a shared factor sufficient to allow a larger discrepancy concerning other aspects of the two offenses, but the two events still must have had shared similarities. Saffor, 660 So.2d at 672. If identity was not a disputed issue, then the degree of similarity did not need to be as striking even in a nonfamilial case. Rawls, 649 So.2d at 1353; see also Morman v. State, 811 So.2d 714, 718 (Fla. 2d DCA 2002) (Altenbernd, J., concurring). This line of cases created few, if any, bright lines and was difficult for trial courts to apply with any degree of confidence.
It is not entirely clear to this panel whether the evidence admitted in this case under the new statute could also have been admitted under this earlier line of cases.[5] Although the charged offense was familial, the earlier misconduct involving Mr. Chambers was nonfamilial. Thus, the less rigid requirements for familial cases announced in Heuring would not have applied. See Saffor, 660 So.2d at 672; see also Freeman v. State, 818 So.2d 580 (Fla. 5th DCA 2002). Because identity was not an issue in this case, perhaps the holding in Rawls would have permitted this evidence to be introduced. However, we note that J.N. was eight at the time of this offense, whereas Mr. Chambers had been twelve or older. The misconduct charged by Mr. Chambers occurred ten years earlier and did not include attempted digital penetration of the anus, which was the primary claim in this case. We decline to issue a hypothetical ruling that it would have been error to admit Mr. Chambers' testimony under the old case law, but the trial judge certainly could have exercised his discretion to exclude this testimony because it lacked the required similarity.
There is no question that the legislature was attempting to alter or overrule the application of existing case law and to simplify the rules of admissibility in child molestation cases when it enacted section 90.404(2)(b). As stated in the senate staff analysis to committee substitute for senate bill 2012:
The effect of this change is to substantially relax the Williams rule as it applies to criminal cases involving child molestation. Although the Florida Supreme Court relaxed the Williams rule for child sexual abuse cases occurring in the familial context in Heuring, and relaxed it even further in Rawls when it extended Heuring to a non-familial, custodial setting, the bill would relax the Williams rule for all child molestation cases, regardless of the presence of a custodial or familial setting. Under the bill, any evidence of prior or subsequent acts of child molestation would be admissible regardless of how similar or dissimilar the other acts are compared to the charged crime. However, the evidence would still be subject to the s. 90.403, F.S., scrutiny of weighing its probative value against its prejudicial effect. This relaxed standard is similar to the one contained in Rule 414 of the Federal Rules of Evidence.
Staff Analysis and Economic Impact Statement of the Judiciary Comm. for C.S.S.B. 2012, 17th Leg., Reg. Sess., Character Evidence/Child Molestation (Fla.2001).
Because it is clear the legislature intended to alter the tests for admissibility of such evidence and the trial court followed the new rules in this case, the primary *802 question today is whether the new statute passes constitutional muster.

A. DUE PROCESS
We recognize that propensity evidence is fraught with risks and that serious legal thinkers have questioned whether it should ever be admissible. See Richard J. Sanders, "A Dangerous Bend in an Ancient Road": The Use of Similar Fact Evidence for Corroboration, 74 Fla. B.J. 40, 46 (Feb.2000). Despite limiting instructions from the trial court, juries may inevitably use evidence admitted under section 90.404(2)(b) to determine whether a defendant has a propensity to commit crimes like the charged offense. Nevertheless, the new Florida statute is virtually identical to Federal Rule of Evidence 414, which has withstood constitutional attack. See United States v. LeMay, 260 F.3d 1018 (9th Cir. 2001); United States v. Mound, 149 F.3d 799 (8th Cir.1998); United States v. Enjady, 134 F.3d 1427 (10th Cir.1998). Moreover, the new statute does not simply open the courthouse to all propensity evidence. As demonstrated in this case, section 90.403 still requires the trial court judge to act as a gatekeeper, weighing the probative value and the prejudicial effect of the proffered testimony. The testimony is introduced with a cautionary instruction to the jury, which is repeated in the final charge. The case law still requires that such testimony not become a central feature of the trial. See Ashley v. State, 265 So.2d 685 (Fla.1972); Sutherland v. State, 849 So.2d 1107 (Fla. 4th DCA 2003). Under these circumstances, when an issue of identity is not in dispute, we cannot conclude that this new rule of evidence violates the fundamental fairness required by due process.
We have repeatedly emphasized that the Williams rule evidence admitted in this case was not introduced for the purpose of establishing identity. Identity has always been the most troublesome issue confronted by the Williams rule. See generally Rawls, 649 So.2d at 1353; Morman, 811 So.2d at 718 (Altenbernd, J., concurring). Whether section 90.403 is sufficient to monitor Williams rule evidence in cases involving identity, or whether due process requires a special rule of "striking similarity" and shared unique characteristics in cases of disputed identity remains an open question in our minds.[6] Accordingly, we conclude that the constitutionality of this statute when addressing the issue of identity should be reviewed in another case where identity is a disputed issue.

B. EX POST FACTO
Mr. McLean was charged with an offense that occurred on October 19, 2000. At that time, section 90.404 did not include this special rule permitting expanded use of Williams rule evidence in cases involving child molestation. The legislature amended section 90.404 during the 2001 legislative session, and the rule became effective July 1, 2001. See ch.2001-221, § 1 at 1938, Laws of Fla. Mr. McLean's trial occurred in November 2001. By a four-to-three vote on July 11, 2002, effective July 1, 2001, the supreme court adopted this rule without ruling on many objections to the rule. See In re Amendments to the Florida Evidence Code, 825 So.2d 339, 341 (Fla.2002). Mr. McLean argues that application of this rule of evidence *803 in his case violates the prohibition against applying laws ex post facto.[7]
There are four very general categories of ex post facto laws proscribed by both the Florida and United States Constitutions: (1) laws that make conduct criminal that was not previously criminal, (2) laws that elevate the level of a criminal offense, (3) laws that increase the punishment for an offense, and (4) laws that alter the rules of evidence in a manner that permits a conviction with less or different testimony. See Carmell v. Texas, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000); Glendening v. State, 536 So.2d 212 (Fla.1988). No ex post facto violation occurs if a change is merely procedural and does not alter substantial personal rights. See Glendening, 536 So.2d at 215 (citing Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)).
In this case, Mr. McLean can argue only that the law altered the rules of evidence in a manner that permitted a conviction with less or different testimony. We reject this argument because a prima facie case of lewd molestation could be established by the testimony of the victim both before and after this amendment to the rule of evidence. This rule permits additional testimony that may cause a jury to be more likely to believe the victim, but this is a qualitative change in the law that does not alter substantial personal rights. Our decision is based largely on the legal reasoning in Glendening, 536 So.2d at 214, which rejected a similar ex post facto challenge to the hearsay exception for certain statements of child victims in section 90.803(23), Florida Statutes (1985).

C. IMPROPER APPLICATION OF STATUTE
Finally, Mr. McLean argues that the trial court erred in admitting Mr. Chambers' testimony even if the statute is constitutional. In essence, he argues that the trial court abused its discretion in determining that the probative value of the evidence admitted was not outweighed by its prejudicial effect. See Harris v. State, 843 So.2d 856 (Fla.2003); Anderson v. State, 841 So.2d 390 (Fla.2003). As we have discussed earlier, it is a close call whether this evidence would have been admissible under the controlling case law prior to the amendment of section 90.404. However, we cannot hold that the trial court abused its discretion when it admitted only those portions of Mr. Chambers' testimony that related to incidents occurring inside a family residence where Mr. McLean was an overnight guest.

IV. CERTIFIED QUESTION
Because this rule of evidence was approved by the supreme court in a divided opinion that did not address constitutional issues, and because this rule may apply in many serious felony trials throughout the state, we certify the following question of great public importance:
DOES SECTION 90.404(2)(b), FLORIDA STATUTES (2001), VIOLATE *804 DUE PROCESS WHEN APPLIED IN A CASE IN WHICH IDENTITY IS NOT AN ISSUE?
Affirmed.
SALCINES and COVINGTON, JJ., concur.
NOTES
[1] See Williams v. State, 110 So.2d 654 (Fla. 1959).
[2] § 794.011(2)(a), Fla. Stat. (2000).
[3] § 800.04(5), Fla. Stat. (2000).
[4] The transcript of the sentencing hearing is not in the record, and the reason for the single judgment is not explained. Presumably, the trial court concluded that the two offenses arose from a single act that could not support dual convictions. The State has not challenged this ruling on appeal.
[5] We address this matter because the constitutionality of the statute might be an issue we could avoid if the evidence would have been admissible under the earlier line of cases.
[6] To assure that the probative value of the evidence always outweighs its prejudicial effect, it may be that a proper legal analysis under section 90.403 should simply incorporate a "striking similarity" test within that rule when addressing an issue of identity.
[7] We note that the supreme court adopted this rule and other rules in July 2002 but indicated that they became effective "on the dates they became law." In re Amendments to the Florida Evidence Code, 825 So.2d at 341. Mr. McLean has not argued that, as a rule of procedure, the trial court should not have utilized the rule until adopted by the supreme court. Apparently, the supreme court intends to allow trial courts to utilize a rule of evidence during the period between its legislative enactment and its adoption by the supreme court if the trial court determines that the new rule of evidence is procedural and does not violate the prohibition against ex post facto application. Obviously, the trial court uses the new rule at the risk that it may later be disapproved by the supreme court. See, e.g., Jones v. R.J. Reynolds Tobacco Co., 830 So.2d 854 (Fla. 2d DCA 2002).